47 A.3d 817

### In re ADOPTION OF S.P.

**Appeal of Washington County Children and Youth Services.**

Supreme Court of Pennsylvania.

Argued April 10, 2012.

Decided May 17, 2012.

310

Joyce A. Hatfield–Wise, for Washington County Children And Youth Services.

Erin Whiteley Dickerson, for S.P.

Mari Ann Hathaway, for G.P.

Kathleen Marie Creamer, Community Legal Services, for Community Legal Services, Inc.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice BAER.

We granted allocatur in the above-captioned case to consider the Superior Court's application of the standard of review and to evaluate the relevance of a parent's incarceration to a trial court's decision to terminate a father's parental rights under 23 Pa.C.S. § 2511(a)(2). For the reasons set forth below, we reverse the Superior Court and reinstate the trial court's order terminating parental rights.

G.P. ("Father"), then nineteen, and B.D. ("Mother"), then approximately seventeen, were involved in an intimate relationship prior to Father's incarceration in December 2004 for the shooting death of his stepfather. While Father was incarcerated, S.P. ("Child") was born in May 2005. According

to documents in the record, at the time of Child's birth Mother was living with a foster family and had been involved with the Washington County Children and Youth Services ("CYS") for several years. After Child's birth, Mother took her to visit Father several times while he was incarcerated at the county prison awaiting trial. In December 2005, Child was declared dependent, when Mother tested positive for THC, a chemical found in marijuana, and was involved in a domestic assault in the presence of Child. Following the declaration of Child's dependency, Mother and Child apparently moved between several foster homes and Child's grandmother's home.

In January 2006, Father pled guilty to third degree murder and was sentenced to five to ten years of incarceration to be served at a state correctional facility. Father petitioned and the trial court granted one contact visit with Child before Father was transferred to the state facility. After Father was transferred, the trial court denied Father's February 2006 request for a contact visit due to concerns over the exposure of the young child to the state facility and the absence of an existing relationship or bond with Father. Father filed an appeal of the trial court's order, which the Superior Court quashed as a result of Father's untimely Pa.R.A.P. 1925(b) Statement of Matters Complained of on Appeal. While in prison, Father participated in classes including anger management and vocational training and sent cards and gifts to Child. However, he did not provide any financial support from his prison wages.

In July 2007, CYS filed an Emergency Shelter Petition after CYS employees were unable to contact Mother to ensure the safety of Child, who continued to live with her. After the hearing on the petition, the trial court placed Child in the care of her maternal great-aunt. In October 2007, Mother gave birth to N.D., Child's half-sister, who was soon thereafter adjudicated dependent and placed in foster care. In November 2007, Child was placed with her half-sister's foster care family. In September 2008, Mother voluntarily relinquished her parental rights to Child. In December 2008, the trial court changed Child's goal to adoption and placed Child and

N.D. in the care of a maternal great-aunt and uncle. At the goal change hearing, testimony was presented that Child suffered developmental delays and had a possible diagnosis of autism, all of which required approximately six appointments each week with various professionals.

In March 2009, the trial court held a hearing on a petition filed by CYS to terminate Father's parental rights. CYS asserted that Father's rights should be terminated under 23 Pa.C.S. § 2511(a)(2), which provides: [1]

§ 2511. Grounds for involuntary termination

(a) General rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

In considering CYS's petition for termination, the trial court recognized that to establish grounds for termination under § 2511(a)(2), CYS must prove by clear and convincing evidence that the parent's "repeated and continued incapacity . . . has caused the child to be without essential parental care, control or subsistence . . . and that the conditions and causes of the incapacity . . . cannot or will not be remedied by the parent." The court noted that "grounds for termination under subsection (a)(2) are not limited to affirmative misconduct; those grounds may include acts of incapacity to perform parental duties." Tr. Ct. Op. at 5. The court further opined, "Although incarceration will certainly impact a parent's capability of performing parental duties, and *may* render a parent incapable of performing parental duties under subsection

1. CYS also petitioned for termination of parental rights under 23 Pa.C.S. § 2511(a)(1), but the trial court did not grant termination on that subsection.

(a)(2), incarceration alone is not sufficient to support termination under any subsection." *Id.* (emphasis in original).

The trial court emphasized that Father had been incarcerated since prior to Child's birth and that he did not have a relationship with Child due to his incarceration. The court stressed that Father had never been able to provide for Child and had not sent Child any of his prison earnings. Additionally, the court noted that, at the time of his incarceration, Father did not have his own housing, employment, or transportation, and had previously been adjudicated delinquent. Accordingly, the court concluded that Father had been incapable of providing for Child since her birth, and was unable to "maintain" a relationship with Child because one never existed. Noting that Child's special needs required a "caregiver who can provide almost constant attention to her needs," the court found that "Father does not currently have the ability to be such a caregiver, nor is it clear when in the future, if ever, he will be capable of doing so." Tr. Ct. Op. at 7.

The trial court concluded that Father's parental rights should be terminated under 23 Pa.C.S. § 2511(a)(2). Specifically, the court observed that, even though there was no affirmative act of Father that resulted in Child being forced into foster care, Father admitted that his incarceration resulted in Child's placement because his absence caused her to be without essential parental care and control. The court further held that the incapacity would not be remedied by Father because even if he would be released on parole at the first possible date in August 2009, he would enter a halfway house, and still need to obtain housing and employment. Again, considering Child's special needs, the court concluded "it is not likely that Father will be capable of providing the care and parenting that [Child] needs in a reasonable amount of time." Tr. Ct. Op. at 8. Recognizing that Father could not provide a date certain when he would be able to parent Child, the court held that Child's "need for permanence and stability will not be subordinated to a parent's claims of progress or hope for the future." Tr. Ct. Op. at 8.

Having concluded that grounds for termination existed under § 2511(a)(2), the trial court turned to the considerations of § 2511(b), regarding the best interests of the Child:

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

In addressing these considerations, the court again emphasized that Child does not have a relationship with Father, that Father will not be able to provide for Child's special needs in any reasonable period of time because even if he is released, "it is unlikely that Father will be able to obtain housing, employment, transportation, fulfill his responsibilities while on parole and provide the care [Child] needs, including transporting her to almost daily therapy appointments and caring for her special needs on a daily basis." Tr. Ct. Op. at 9. The court also recognized Child's strong bond with her half-sister, with whom she has lived since her half-sister was born in October 2007, and observed that placing Child with Father would result in separating her from her half-sister. Given these considerations, the court granted the petition to terminate Father's parental rights concluding that termination would best serve the needs and welfare of Child pursuant to § 2511(b).

Father appealed to the Superior Court, which vacated the trial court's June 2009 decision in October 2010. The Superior Court then granted CYS's application for reargument, withdrew its prior decision, and heard the case *en banc*. In August 2011, the Superior Court again vacated the trial

court's decision to terminate Father's parental rights in an en *banc* five to four decision.

The majority summarized the issue presented as "whether reasons other than the fact of Father's incarceration provide the basis for the termination of Father's rights" under § 2511(a)(2). The court held, "After a careful review of the record, including uncontroverted evidence of Father's efforts to establish and maintain a relationship with the child since her birth and his unassisted efforts to prepare himself to assume parental responsibilities and to enter the work force, we reverse." *In re: Adoption of S.P,* 32 A.3d 723, 726 (Pa.Super.2011).

After providing its own summary of the record and hearing testimony, the Superior Court provided a correct statement of the standard of review. As explored more fully below, the court observed,

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that it would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*Id.* at 728–29 (Pa.Super.2011) (quoting *In re: B.L.W.,* 843 A.2d 380, 383 (Pa.Super.2004)). The court additionally stated that the burden of proof rested on the agency to prove the existence of grounds for termination of parental rights by clear and convincing evidence. *Id.* at 729. The court correctly observed, "If the trial court's findings are supported by competent evidence, we must affirm the court's decision, even though the record could support an opposite result." *Id.*

Having stated the proper scope and standard of review, the Superior Court turned to the impact of Father's incarceration on the termination of his parental rights. The court opined, "The Pennsylvania Supreme Court held more than thirty years ago that incarceration alone is not a sufficient basis for termination of parental rights." *Id.* at 730 (citing but not directly quoting *In re: Adoption of McCray*, 460 Pa. 210, 331 A.2d 652, 655 (1975)). The Superior Court correctly observed that the *McCray* decision held that "incarceration is not conclusive of the issue of abandonment," which was the statutory requirement for termination at the time, but rather required the courts to "inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited." *McCray*, 331 A.2d at 655 (internal quotation marks omitted).

Important to this decision, the Superior Court recognized that the decision in *McCray* considered incarceration's effect on abandonment, which is now encompassed in § 2511(a)(1), rather than incapacity, which is the statutory grounds for termination under § 2511(a)(2) at issue in the case at bar. The Superior Court majority acknowledged that the application of the "*McCray* rule" to § 2511(a)(2) "has proven difficult, inasmuch as a parent's incarceration is obviously an 'incapacity' that precludes day-to-day interactions and activities normally attendant to a parent-child relationship." *S.P.*, 32 A.3d at 731. Nevertheless, the court opined that the legislature has not chosen to amend § 2511 to address the effect of incarceration on termination, even though it has amended the statute in other ways and other states have amended their statutes to address directly incarceration.

The majority reviewed several Superior Court opinions which have attempted to reconcile *McCray* with § 2511(a)(2). The court summarized precedent in which parental rights have not been terminated where the incarcerated parents utilized available resources to maintain relationships with their children. *In re: I.G.*, 939 A.2d 950 (Pa.Super.2007); *Bartasavich*

*v. Mitchell,* 324 Pa.Super. 270, 471 A.2d 833, 834 (1984). Conversely, the majority observed that other panels of the Superior Court have concluded that grounds for termination exist where a parent is serving a long sentence of incarceration or repeated incarcerations, because § 2511(a)(2) allows the courts to consider the effect of the incarceration in regard to the child's present and future need for essential parental care, control, or subsistence necessary for his physical or mental well-being. *In re: Z.P.,* 994 A.2d 1108 (Pa.Super.2010); *In re: E.A.P.,* 944 A.2d 79 (Pa.Super.2008); *In re: C.A.W. and A.A.W.,* 453 Pa.Super. 277, 683 A.2d 911 (1996); *In re: V.E. and J.E.,* 611 A.2d 1267 (Pa.Super.1992); *In re: M.J.H.,* 348 Pa.Super. 65, 501 A.2d 648 (1985).

With the case law review complete, the Superior Court first considered whether Father's conduct constituted grounds for termination under § 2511(a)(2). Although recognizing that Father only had six visits with S.P. during her life, the Superior Court essentially placed the responsibility for the lack of visits on the trial court and CYS. Listing Father's efforts sending cards and letters and requesting Child's artwork, the court also concluded, "Father did as much as he could possibly have done from prison, despite the lack of intervention or a family service plan from the Agency." *S.P.,* 32 A.3d at 736. The Superior Court stated that it could not weigh the lack of visits against Father because the limitation on contacts had been imposed on him.

Apparently not accepting the trial court's observation that Father admitted that his actions caused Child's placement, the Superior Court concluded, "We observe also that the incident leading to Father's incarceration was not directly related to events that led to [Child's] placement in foster care." *Id.* at 737. Instead, the court focused on testimony of a social worker from a goal change hearing who opined that Father had put substantial efforts into establishing a relationship with Child, did everything he could do from prison, and would be capable of parenting, even though the same social worker had testified at the subsequent termination hearing that Father

would not be capable of parenting. *Id.* n. 17.[2] Despite the trial court's conclusion that Father's incarceration left him incapacitated to parent under § 2511(a)(2), the Superior Court concluded, "His incarceration leaves him incapacitated to perform many parental functions, but incarceration alone is not a sufficient reason to terminate parental rights." *Id.* at 737.

Considering that Father was about to be reviewed for parole in a few months with what the court deemed a clean prison record, that those sentenced for third-degree murder generally only serve 65–70% of their maximum sentence, and that he had pursued vocational training in prison, the Superior Court held that the record did not support the conclusion that "the inherent limitations on Father's ability to parent [Child] from prison cannot or will not be remedied." *Id.* at 738. The Superior Court faulted the trial court for being unable to "point to any action or inaction by Father establishing refusal or neglect, other than his incarceration." *Id.* As the court concluded that CYS failed to meet its burden of proving grounds for termination under § 2511(a)(2),[3] it did not address the considerations of § 2511(b) relating to the child's best interests, as it correctly noted that § 2511(b) is only applicable if grounds for termination exist under subsection (a). *Id.* at 739. Accordingly, the court reversed the decision of the trial court to terminate Father's rights under § 2511(a)(2).

The four-judge dissent faulted the majority for failing to pay deference to the trial court's credibility and weight determinations and instead basing its decision "exclusively on the fact that while imprisoned, Father sent Child some presents and cards, took vocational training, and appealed an order

**2.** The Superior Court criticized the trial court for relying upon the later testimony and ignoring the former without an explicit explanation for the contradictory statements. Not only does this suggest that the Superior Court is supplanting the trial court's credibility determinations, but it also demonstrates a failure to recognize that a social worker's opinion regarding parental abilities may change with the passage of time and the benefit of additional observations.

**3.** As expanded upon *infra*, the core difficulty with the Superior Court's analysis is that it addresses considerations relevant to abandonment under § 2511(a)(1), rather than incapacity under § 2511(a)(2), which are determinative of this case.

denying a contact visit." *S.P.*, 32 A.3d at 739 (Allen, J. dissenting). The dissent criticized the majority for creating a test that termination may not occur so long as the parent is making efforts to contact the child while in prison. The dissent emphasized that termination of parental rights under § 2511(a)(2) is not limited to affirmative misconduct but also may be satisfied by clear and convincing evidence of parental incapacity that cannot be remedied, even when the parent makes sincere efforts. *Id.* at 741. The dissent asserted that a child's life "cannot be put aside or on hold simply because the parent is doing what he is supposed to do in prison." *Id.* (quoting *E.A.P.*, 944 A.2d at 85).

The dissent highlighted that Father never had a meaningful relationship with Child and could have done more to inquire about Child's well-being including her potential special needs. The dissent also noted that Father had no reasonable prospect of being able to parent Child, even assuming an imminent release from prison, given that he would be placed in a half-way house and would be required to obtain housing, employment and transportation, in addition to learning how to care for a special needs child. The dissent compared the case to the Superior Court's prior decisions in *Z.P.* and *E.A.P.*, affirming the termination of parental rights where the parents had been incarcerated for most of the children's lives, had participated in programs in prison, and attempted to establish a relationship with the children, but had no reasonable prospect of being able to parent, even once released.

The dissent found the trial court's decision to terminate Father's parental rights to be supported by clear and convincing evidence. The dissent concluded, "Although it is possible that the evidence could support an opposite result, depending on the weight and credibility determinations of the fact finder, there was no abuse of discretion or error of law upon which to disturb the trial court's decision to terminate Father's parental rights." *Id.* at 745–46.

CYS filed a petition for allowance of appeal in September 2011, which this Court granted in October 2011 limited to the following questions:

1. Whether the Superior Court of Pennsylvania failed to apply the proper standard of review by reversing the trial court's order which is supported by the record.

2. Whether the Superior Court of Pennsylvania committed an error of law when it placed father's effort above findings of "repeated and continued incapacity" caused by his incarceration, under 23 Pa.C.S. § 2511(a)(2), and in not considering the effect of father's incapacity on the child's need for essential parental care, control or subsistence.

*In re Adoption of S.P.*, 612 Pa. 476, 31 A.3d 287 (2011). Both questions essentially require this Court to determine if the Superior Court erred in reversing the trial court's termination of Father's rights, with particular consideration given to the correlation between Father's incarceration and § 2511(a)(2), providing for termination based upon "repeated and continued incapacity . . . of the parent" that has "caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being." 23 Pa.C.S. § 2511(a)(2).

Before this Court, CYS asserts that the Superior Court made its own factual findings from the cold transcript, rather than relying upon the facts found by the trial court. Specifically, CYS notes that the Superior Court stated that Father had a clean prison record and that it was unclear how much prison time remained. In contrast, the trial court made no findings regarding Father's prison record and held that it was doubtful that Father would be released at his then-upcoming August 2009 parole hearing. Similarly, CYS complains that the Superior Court stated that Father pled guilty for the "unintentional but reckless shooting of his adoptive father when Father was fiddling with a gun." *S.P.*, 32 A.3d at 726. While those findings were suggested by Father's guilty plea proceedings, CYS emphasizes that this trial court in the termination proceeding did not speak to whether the homicide was unintentional.[4] Accordingly, CYS argues that the Superi-

4. Indeed, as Father's criminal case involved a guilty plea, no court or jury ever determined whether Father's acts were unintentional.

or Court substituted its own factual findings for those of the trial court.

Turning to the legal question, CYS asserts that the Superior Court "committed an error of law when it placed Father's efforts above findings of 'repeated and continued incapacity' caused by his incarceration, under 23 Pa.C.S. § 2511(a)(2), and in not considering the effect of Father's incapacity on the child's need for essential parental care, control, or subsistence." CYS's Brief at 15. CYS emphasizes that this Court has never restricted application of § 2511(a)(2) to affirmative misconduct and that the Superior Court has held that incarceration neither compels nor precludes termination of parental rights.

CYS also notes that, in reversing the ultimate decision of the trial court, the Superior Court emphasized "uncontroverted evidence of Father's efforts to establish and maintain a relationship with the child since her birth and his unassisted efforts to prepare himself to assume parental responsibilities and to enter the work force." *S.P.*, 32 A.3d at 726. In contrast, CYS argues that Father's efforts were properly considered by the trial court but found to be insufficient, as his efforts did not remedy his continued incapacity and did not provide the child with the essential parental care, control, or subsistence necessary for the child's physical and mental well-being. Moreover, the trial court found that Father's incapacity cannot or will not be remedied by Father within a reasonable time as Father will still need to enter a halfway house, obtain housing and employment, fulfill his responsibilities on parole, and learn to parent a child with special needs, whom he does not know. CYS asserts that because the Superior Court did not find that the trial court either abused its discretion or committed an error of law, it instead merely substituted its judgment for the trial court's judgment, in disregard of the appropriate standard of review. CYS asks the Court to reverse the Superior Court and reinstate the trial court's order terminating Father's parental rights to Child.[5]

---

5. CYS is supported by Child's Guardian ad Litem, though technically an appellee in the case. Conversely, *amicus curiae*, Community Legal Services, Inc., files a brief in support of Father.

Father argues that the Superior Court properly applied the standard of review. Additionally, Father's *amicus curiae* contests CYS's claim that the Superior Court made its own factual findings and instead asserts that the minor facts stated by the Superior Court, but not included in the trial court's opinion, had no influence on the Superior Court's assessment of whether the trial court erred in terminating Father's rights.

Father argues that the Superior Court properly reversed the trial court's order terminating his parental rights because the trial court improperly based its conclusion on the fact of Father's incarceration. Father emphasizes what he views as our longstanding case law that incarceration alone is insufficient to support the involuntary termination of parental rights under § 2511(a). Father argues that the focus in cases of incarcerated parents should be on whether the parent failed to utilize the given resources and take affirmative steps to support the parent-child relationship. He contends that the trial court failed to identify any resource that he did not utilize. Instead, he asserts that the record supports the conclusion that he took the initiative: (1) to learn parenting, anger management, and life skills; (2) to send cards, letters, and gifts to Child; (3) to request contact visits with child; (4) to ask for updates regarding Child; (5) to request photos and artwork of Child; and (6) to request participation in every hearing regarding his daughter. He argues that we have reversed decisions to terminate in similar cases where an incarcerated parent has availed himself of resources to maintain a place of importance in the child's life, citing *Adoption of M. T. T.*, 467 Pa. 88, 354 A.2d 564 (1976) (reversing termination of parental rights of incarcerated father based upon failure to prove abandonment).

Father additionally contends that there is nothing in the record to support the trial court's conclusion that Father's incapacity to parent could not or would not be remedied, given that his minimum sentence was to expire within a few months of the termination petition hearing and he had been a model prisoner during his incarceration. He argues that, given all he has accomplished on his own without the help of agency

services, "it is more likely than not that Father would remedy his inadequate housing condition as well as any other condition which, by virtue of his incarceration, renders him currently unable to remedy." Father's Brief at 18. Father argues that our recent decision in *In re: R.I.S.*, 614 Pa. 275, 36 A.3d 567 (2011) (plurality), is not at odds with this case in that the lead opinion reiterated that incarceration alone cannot constitute proper grounds for the termination of parental rights. Father asks us to affirm the decision of the Superior Court reversing the trial court's decision to grant CYS's termination petition.

In addressing CYS's first issue on appeal, we repeat that appellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.; R.I.S.*, 36 A.3d at 572. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.; see also Samuel–Bassett v. Kia Motors America, Inc.*, 613 Pa. 371, 34 A.3d 1, 51 (2011); *Christianson v. Ely*, 575 Pa. 647, 838 A.2d 630, 634 (2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to

second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064, 1066 (1994).

■ As stated, CYS in its first argument claims that the Superior Court failed to abide by the proper standard of review. While CYS is correct that the Superior Court improperly highlighted aspects of the record not addressed by the trial court, it does not appear that the Superior Court based its conclusion on those facts. Accordingly, we do not reverse the Superior Court for substituting its judgment for that of the trial court. Instead, as discussed fully in the next section, we conclude that the Superior Court erred in reversing the trial court based upon the Superior Court's misinterpretation and misapplication of *McCray* to § 2511(a)(2) to forbid termination in a case where a parent utilizes all prison resources but remains incapable of parenting a child.

Accordingly, we turn to the primary legal issue present in the case: the relevance of incarceration in termination of parental rights decisions under § 2511(a)(2). As stated above, § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." If and only if grounds for termination are established under subsection (a), does a court consider "the developmental, physical and emotional needs and welfare of the child" under § 2511(b).

This Court has addressed incapacity sufficient for termination under § 2511(a)(2):

A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can

seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

*In re: Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883, 891 (1986) (quoting *In re: William L.*, 477 Pa. 322, 383 A.2d 1228, 1239 (1978)).

In the 1970s, this Court considered the issue of termination of parental rights of incarcerated persons in *McCray*, 331 A.2d 652, discussed *supra* and *infra*, and other cases involving abandonment, currently codified at 23 Pa.C.S. § 2511(a)(1). *See also In re: Adoption of Baby Boy A. v. Catholic Social Services of the Diocese of Harrisburg, Pennsylvania, Inc.*, 512 Pa. 517, 517 A.2d 1244 (1986) (affirming termination of parental rights where father failed to fulfill his parental duties by neglecting to communicate with his child during a fifteen-month period in prison); *In re: Adoption of Infant Male M.*, 485 Pa. 77, 401 A.2d 301 (1979) (affirming termination of parental rights where incarcerated father failed to utilize resources available); *In re: M. T. T.'s Adoption*, 467 Pa. 88, 354 A.2d 564 (1976) (holding termination based upon abandonment precluded where incarcerated father utilized available resources). The relevant statutory language, which is distinct from the language of § 2511(a)(2) under scrutiny herein, provided grounds for termination if the parent "evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties" for a period of at least six months. *McCray*, 331 A.2d at 653 n. 2.

Applying in *McCray* the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." *Id.* at 655. We observed that the father's incarceration made his performance of this duty "more difficult." *Id.*

As often improperly quoted by the Superior Court in support of the assertion that incarceration alone cannot be grounds for termination under any provision of § 2511(a), we stated:

> [A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

*Id.* at 655 (footnotes and internal quotation marks omitted). Notably, we did not decree that incarceration could never be a factor in a court's determination that grounds for termination had been met in a particular case. Instead, the emphasis of this passage was to impose on the incarcerated parent, pursuant to an abandonment analysis, a duty to utilize available resources to continue a relationship with his or her child. Indeed, in *McCray*, this Court agreed with the trial court and concluded that termination was appropriate where the father failed to perform parental duties for a six month period of time.

The Superior Court, however, has interpreted *McCray* as providing that "The Pennsylvania Supreme Court held more than thirty years ago that incarceration alone is not a sufficient basis for termination of parental rights," *S.P.*, 32 A.3d at 730, conflating the statutory criteria for termination in a § 2511(a)(1) abandonment case with the standard applicable in a § 2511(a)(2) incapacity case.[6] As developed below, we now adopt the view of other Superior Court panels that have determined that "incarceration neither compels nor precludes termination." *Z.P.*, 994 A.2d at 1120. Instead, we hold that incarceration is a factor, and indeed can be a determinative

---

**6.** To the credit of the majority below, the court noted that the Superior Court has struggled to apply the so-called *McCray* rule to § 2511(a)(2)'s grounds for termination due to incapacity.

factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

We recognize that this Court considered a similar, but distinguishable, factual scenario a few months ago in *R.I.S.*, 36 A.3d 567. Importantly, *R.I.S.* involved the trial court's decision to deny termination of an incarcerated parent, whereas the case at bar involves a trial court's decision to terminate. In *R.I.S.*, we ultimately reversed the Superior Court for substituting its judgment for the trial court's determination to deny termination.[7] Accordingly, we did not reach the question currently before the Court regarding when grounds for termination may be satisfied by a parent's incarceration.

Nevertheless, in the plurality opinion in *R.I.S.*, several members of this Court explicitly questioned the assertion that incarceration, especially a lengthy incarceration, cannot serve as a determinative factor to be considered in a termination of parental rights decision. The lead opinion in *R.I.S.* notably provided, "We reverse and take this opportunity to reiterate a principle that this Court has never abandoned: that a parent's incarceration, standing alone, cannot constitute proper grounds for the termination of his or her parental rights," *Id.* at 569, but followed that statement with a footnote observing that: "We make no ruling with respect to the involuntary termination of parental rights grounded on the prohibitive length of a parent's sentence of incarceration." *Id.* at 574.

---

**7.** The lead opinion in *R.I.S.* characterized the Superior Court's derogation of the standard of review as "particularly egregious" noting:

[T]he Superior Court improperly substituted its judgment for that of the trier of fact. The trial court determined that the length of Father's sentence was not so great as to foreclose the possibility of the successful maintenance of the parent-child relationship, and that termination of Father's parental rights would not serve the best interests of the children. The Superior Court viewed the same facts, and drew the opposite conclusion.

*Id.*, 36 A.3d at 574.

Additionally, a concurring opinion joining the lead opinion questioned the bright-line rule that incarceration alone cannot constitute grounds for termination. Agreeing that incarceration in and of itself does equate to *per se* evidence of parental incapacity, the concurring opinion, supported generally by three other justices,[8] concluded that incarceration can be a factor in a trial court's decision to terminate parental rights. Addressing § 2511(a)(2),[9] the concurring opinion observed, "It is beyond cavil that in many cases, including the one at bar, an incarcerated parent is confined twenty-four hours a day, seven days a week; obviously resulting in his being incapable of providing the essential parental care, control or subsistence necessary for a child's physical and mental well-being." *R.I.S.*, 36 A.3d at 578 (Baer, J., concurring). The question, then, becomes whether the parent can remedy the incapacity, which depends to a significant degree on the length of the parent's sentence:

> [T]he fact of incarceration during an ongoing dependency action will not disqualify a parent from resuming parental responsibility so long as the parent will be released quickly enough to permit the court to provide the child with timely permanency upon reunification. If, however, the length of parent's incarceration will preclude the court from unifying the (former) prisoner and the child on a timely basis in order to provide the child with the permanent home to

8. This writer authored the referenced concurring opinion in *R.I.S.* Justice Saylor, joined by Chief Justice Castille, agreed with the thoughts expressed in the concurring opinion, but also opined that the facts of *R.I.S.* presented a closer case for termination than suggested by the lead opinion. These justices nonetheless deferred to the trial court's determination denying termination. Additionally, Justice Todd agreed with this author's concurring opinion but wrote separately to address the standard of review in the case. Justice Orie Melvin dissented from the majority's ultimate holding, finding instead that the facts of *R.I.S.* provided grounds for termination. As discussed in detail in the body of this opinion, the dissent was philosophically aligned with the concurrences in the conclusion that the length of incarceration can satisfy the statutory grounds for termination of parental rights under appropriate facts.

9. The concurring opinion also addressed the relevance of incarceration to several other subsections of § 2511(a), which are not present in the case at bar.

which he or she is entitled, then the length of sentence, standing alone, should and does meet the legal criteria for involuntary termination of the incarcerated parent's parental rights under 23 Pa.C.S. § 2511(a).

*Id.* at 576.

Justice Orie Melvin, dissenting to the ultimate determination denying termination in *R.I.S.*, also opined that a parent's incarceration may justify termination of parental rights under § 2511(a)(2). Noting that this Court has not addressed the relationship between the length of incarceration and termination of parental rights since *Adoption of Baby Boy A.* in 1986, the dissent observed that this Court has "never foreclosed the possibility that incarceration and the attendant circumstances may render a parent incapable of both providing essential parental care and remediation of that situation." *R.I.S.*, 36 A.3d at 586 (Orie Melvin, J., dissenting). She noted with approval the Superior Court's case law providing that courts cannot employ an "isolated evaluation" of the issue of incarcerated parents in termination cases but instead "must take into consideration all of the relevant factors, including the nature of the relationship before incarceration, the terms of incarceration, and their effect on a parent's ability to perform parental duties, along with a parent's efforts to remain involved with his child while incarcerated." *Id.* at 586 (citing *In re Z.P.*, 994 A.2d 1108). The dissent further opined that "[l]ong-term incarceration, where a prisoner's ability to parent his child in the foreseeable future is 'speculative at best,' will justify termination of parental rights under section 2511(a)(2) even if the parent expresses a willingness to parent the child." *Id.* Noting that this Court has held that "a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties," the dissent observed that "the same considerations apply when the incapacity stems from lengthy incarceration and not just from a mental or physical disability." *Id.* at 586 (quoting *Adoption of J.J.*, 515 A.2d at 891).

In line with the expressed opinion of a majority of justices in *R.I.S.*, our prior holdings regarding incapacity, and

numerous Superior Court decisions, we now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). *See e.g. Adoption of J.J.*, 515 A.2d at 891 ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); *E.A.P.*, 944 A.2d at 85 (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).' If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

▮ As applied to this case, we conclude the Superior Court erred in reversing the trial court's decision to terminate Father's parental rights where that decision was supported by the record and did not constitute an abuse of discretion or an error of law. The trial court properly found that Father has been incarcerated since prior to Child's birth and never provided Child with essential parental care. Accordingly, the court did not abuse its discretion in concluding that Father's "repeated and continued incapacity ... caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being." 23 Pa.C.S. § 2511(a)(2). Moreover, the record supports the trial court's findings regarding the uncertainty of Father's parole date and

that, even upon parole, Father would reside in a half-way house and would need to obtain housing, employment and transportation in addition to parenting skills. Accordingly, the trial court did not abuse its discretion when it concluded that "the conditions and causes of the incapacity . . . cannot or will not be remedied" by Father. 23 Pa.C.S. § 2511(a)(2). Finally, given that Child did not have a relationship with Father, that Father would not be able to provide for her, especially considering her special needs, and that Child had a strong bond with her maternal half-sister, the trial court did not abuse its discretion in concluding that terminating Father's rights would best serve the "developmental, physical and emotional needs and welfare" of Child. 23 Pa.C.S. § 2511(b).

In that the trial court did not abuse its discretion or commit an error of law, we reverse the decision of the Superior Court and reinstate the trial court's order terminating G.P.'s parental rights.

Chief Justice CASTILLE, Justices SAYLOR, EAKIN, TODD, McCAFFERY and ORIE MELVIN join this opinion.