J-A13028-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: A.J.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.F.M. AND L.M.G. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 135 WDA 2024 |

Appeal from the Order Entered December 29, 2023
In the Court of Common Pleas of Elk County
Orphans' Court at No(s): 2023-0005

BEFORE: OLSON, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY SULLIVAN, J.: **FILED: July 19, 2024**

S.F.M. ("Maternal Grandfather") and his wife, L.M.G. ("Step-Grandmother") (collectively, "Appellants"), appeal from the order denying their petition seeking to involuntarily terminate the parental rights of T.L.S. ("Father") to his natural daughter, A.J.C. ("Child"), born in September of 2020. We affirm.

We summarize the factual and procedural history as follows.[1] The certified record reveals that Father and S.N.M. ("Mother") have a history of substance abuse and incarceration both before and after Child's birth. Father was incarcerated on November 3, 2021, until his maximum sentence date on

---

[1] The orphans' court set forth fifty-one findings of fact in its opinion that accompanied the subject order, which are fully supported by the testimonial and documentary evidence presented at the involuntary termination proceeding on June 27, 2023. As such, we adopt them herein. **See** Orphans' Court Opinion, 12/29/23, at ¶¶ 1-51.

August 28, 2023. *See* N.T., 7/27/23, at 63-64.[2] Mother, who was incarcerated on and off during Child's life, entered prison for the last time in August of 2022, and died there on January 15, 2023. *See id*. at 8, 39.

Because the custody proceedings are relevant to this appeal, we summarize them briefly, as follows. In mid-2021, Father initiated a child custody case against Mother. By interim order entered in October 2021, the custody court awarded Father and Mother shared legal custody, Mother primary physical custody, and Father supervised physical custody. *See* Orphans' Court Opinion, 12/29/23, at ¶ 13. However, because Mother was incarcerated soon thereafter, the custody court awarded Father primary physical custody later that same month. *See id*. at ¶ 14. Father's primary physical custody lasted only until his incarceration the following month, on November 3, 2021. *Id*. at ¶¶ 3, 13-15. Consequently, on November 8, 2021, the custody court placed Child in the sole physical custody of Mother, who by then was no longer incarcerated. *Id*. ¶ 15. On December 15, 2021, Mother executed a document appointing Appellants "as the standby guardians" of Child, "to take effect upon the occurrence of Mother being unavailable for any reason to care for" Child. N.T., 7/27/23, at Pet'rs' Ex. 7.

---

[2] Father was initially incarcerated at Westmoreland County prison. Father testified that he was transferred to SCI–Laurel Highlands on November 23, 2022. *See* N.T., 7/27/23, at 63-64; *see also id*. at Resp't's Ex. A.

Mother was re-incarcerated on December 28, 2021. Child "primarily resided" with Appellants until the time of Mother's release several months later. Orphans' Court Opinion, 12/29/23, at ¶ 19.[3] Following a custody settlement conference at which neither Father, nor counsel on behalf of Father, appeared, the custody court issued an order directing that Mother and Maternal Grandfather "shall share custody" of Child, which included both legal and physical custody. *See id*. at 22.

Mother was released from prison on March 13, 2022, after which Child "stayed with [Appellants] occasionally while otherwise residing with" Mother. Orphans' Court Opinion, 12/29/23, at ¶ 19. As stated above, Mother was re-incarcerated for the final time in August of 2022, which ended with her death in January 2023. *See* N.T., 7/27/23, at 8, 39, 48. Child resided with Appellants from August of 2022, through the time of the subject proceeding. *Id*. at 48.

With respect to Father's actions, during his incarceration, and vis-à-vis Child, the orphans' court found as follows:

35. [Father] . . . attempted to communicate by several letters with [Mother] regarding [Child] . . . while he was incarcerated prior to [Mother's] death . . ..

36. [Father], while incarcerated at SCI-Laurel Highlands, . . . attempted to enroll in a child program that assisted with fathers' outreach with their children while incarcerated with the

___

[3] On January 24, 2022, Maternal Grandfather filed a petition to intervene in the custody action, which the court granted prior to a custody settlement conference. *See* N.T., 7/27/23, at 21-22.

Pennsylvania Department of Corrections, but he was placed on a wait list to participate in the program.

37. [Father], while incarcerated at SCI-Laurel Highlands, . . . wrote a letter to Danielle Melillo, Esquire, attorney of Maternal Grandfather, requesting that he be permitted to have "Zoom visits" with [Child]. . . .

38. [Father], while incarcerated at SCI-Laurel Highlands, . . . had issues or problems with sending and receiving mail as demonstrated by exhibits presented into evidence by Father.

39. [Father] . . . attempted through family in North Carolina to send shoes and clothing to Child.

\* \* \* \*

***46. On April 5, 2023, [Father] wrote a letter to Maternal Grandfather's attorney . . . regarding [Child. T]hereafter, [Father] was served with the present petition to terminate his parental rights to [Child].***

***47. On April 18, 2023, [Appellants] filed their petition for involuntary termination of parental rights of [Father] to [Child].***

48. In Elk County at Civil Docket No. 2021-397, as of [the date of the termination hearing,] there was a pending child custody modification proceeding involving Child, whereby [Father] is the plaintiff[;] Mother, now deceased, is the defendant[;] [Maternal] Grandmother is an additional defendant[;] and Maternal Grandfather is an additional defendant. [Maternal Grandmother had filed a petition for modification of custody under that docket in January 2023; Maternal Grandfather filed preliminary objections in March 2023; and Father filed a motion for continuance in this case in April 2023.]

\* \* \* \*

Orphans' Court Opinion, 12/29/23, at 6-8 (emphasis added) (unnecessary capitalization omitted); ***see also*** N.T., 7/27/23, at 65-67, 73-75, 100-01.

In their termination petition, Appellants alleged grounds for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[4] Appellants filed a petition to adopt Child should Father's parental rights be terminated. *See* N.T., 7/27/23, at 34.

Following the evidentiary hearing on the involuntary termination petition in July 2023,[5] at which the orphans' court heard the evidence summarized above, the court denied the termination petition on the merits. *See* Order, 12/29/23. Specifically, the court concluded that Appellants had "failed to present clear and convincing evidence to support the involuntary termination of [the] parental rights of [Father] . . . ." Findings of Fact, 12/28/23, at p. 12. Appellants timely filed a notice of appeal, and both they and the orphans' court complied with Pa.R.A.P. 1925.

On appeal, Appellants present the following issues for review:

1. Whether the [orphans'] court erred in determining that it does not have jurisdiction to adjudicate the petition for involuntary termination because [Appellants] failed to file a report of intention to adopt pursuant to 23 Pa.C.S.A. § 2531(c)?

2. Whether there was structural error in the failure of an attorney to represent [C]hild's legal interests?

---

[4] By order dated May 17, 2023, the orphans' court appointed Jeanne R. Miglicio, Esquire ("GAL") to serve as guardian *ad litem* for Child. Amended Order, 5/17/23.

[5] Appellants testified on their own behalf. Father testified *via* telephone from SCI-Laurel Highlands, and he presented the testimony of Child's maternal grandmother, D.B. ("Maternal Grandmother").

3. Whether the [orphans'] court erred in not terminating Father's parental rights under 23 Pa.C.S.A. § 2511(a)(1)?

4. Whether the [orphans'] court erred in not terminating Father's parental rights under 23 Pa.C.S.A. § 2511(a)(2)?

5. Whether the [orphans'] court erred in not terminating Father's parental rights under 23 Pa.C.S.A. § 2511(a)(5)?

6. Whether the [orphans'] court erred in not terminating Father's parental rights under 23 Pa.C.S.A. § 2511(b)?

7. Whether the [orphans'] court erred by giving any weight to the action of the Elk County Prothonotary's office in the termination hearing?

Appellants' Brief at 2-4 (issues reordered for clarity).[6]

Appellants, in their first issue, argue the orphans' court improperly raised *sua sponte* the issue of standing in its opinion accompanying the order denying the termination petition.[7]

_____

[6] Child's GAL did not file a brief in this appeal.

[7] The orphans' court adjudicated the involuntary termination petition on its merits. However, in its opinion accompanying order denying the petition, the court opined that Appellants did not have standing to file the petition to terminate Father's parental rights pursuant to 23 Pa.C.S.A. §§ 2512(a)(3) (who may file a petition for involuntary termination) and 2531(c) (when report of intention to adopt not required). Specifically, the court concluded that Step-Grandmother did not have standing to file the subject petition because step-grandchildren are not included in section 2531(c); therefore, Step-Grandmother was required to submit a report of intention to adopt. Because Appellants did not submit a report, the court concluded that it did not have jurisdiction over the petition for involuntary termination pursuant to Section 2512(a)(3). ***Neither Father nor Appellants raised the issue of standing during the underlying proceeding***.

- 6 -

It is well-established that "[w]hether a party has standing to maintain an action is not a jurisdictional question." *In re Nomination Petition of deYoung*, 903 A.2d 1164, 1168 (Pa. 2006) (internal quotation marks and citation omitted). *See also Commonwealth v. Koehler*, 229 A.3d 915, 940-41 (Pa. 2020) (noting that standing cannot be raised by courts *sua sponte*).

With respect to Appellants' first issue, we conclude that the orphans' court improperly questioned Appellants' standing *sua sponte* in its opinion that accompanied the subject order. *See* Orphans' Court Opinion, 12/29/23, at 8-10; *see Koehler*, 229 A.3d at 941. However, the orphans' court's error was harmless because it did not interfere with that court's disposition of the petition on the merits. *Cf*. *In re A.J.R.-H.*, 188 A.3d 1157, 1175 (Pa. 2018) (an error is harmless if it "could not have had any impact upon the orphans' court's decision").

In their second issue, Appellants assert that the court erred by failing to appoint an attorney to represent Child's legal interests pursuant to section 2313(a). In addition, they argue that "the record is [de]void of any position of best interest or legal interest in the matter on behalf of" Child. Appellants' Brief at 11.

Our Supreme Court has explained that 23 Pa.C.S.A. § 2313(a) requires the lower court to appoint an attorney to represent a child's legal interests in termination proceedings, and that a single attorney may represent a child's best interests as GAL, and legal interests as counsel, only if there is no conflict

between the child's best and legal interests. *See In re Adoption of K.M.G.*, 240 A.3d 1218, 1223-24 (Pa. 2020). However, "if the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal," then the mandate of section 2313(a) "is satisfied where the court has appointed an attorney-guardian *ad litem* who represents the child's best interests during such proceedings." *In re T.S.*, 192 A.3d 1080, 1092-93 (Pa. 2018).

Following our review, we conclude Appellants' issue merits no relief. As discussed above, the orphans' court appointed the attorney-GAL to represent the best interests of Child. We reject Appellants' argument that Child's legal interests were not represented when she was under three years old at the time of the contested termination proceeding on July 27, 2023, and her preferred outcome was incapable of ascertainment. *See In re T.S.*, 192 A.3d at 1092-93.[8]

---

[8] To the extent Appellants assert that the attorney-GAL failed to represent Child's best interests, their argument is waived for not being included in their statement of questions involved and concise statement of errors complained of on appeal. *See In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017) (reiterating that "issues not included in an appellant's statement of questions involved and concise statement of errors complained of on appeal are waived."). Even if Appellants had preserved their argument, we would conclude that it is waived for failure to develop it. *See id*. at 465-66 (reiterating that a claim is waived where an appellate brief fails to provide any discussion of the claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review).

Turning to their third through fifth issues, which we address together as they all pertain to section 2511(a), Appellants argue that the court abused its discretion in concluding that they did not satisfy their burden of proof pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (5).[9]  Our standard of review is as follows: in this context, we consider whether the orphans' court's order is supported by competent evidence.  ***See In re Adoption of C.M.***, 255 A.3d 343, 358 (Pa. 2021).  In applying this standard, appellate courts must accept the orphans' court's findings of fact and credibility determinations if they are supported by the record.  ***See Interest of S.K.L.R.***, 256 A.3d 1108, 1123 (Pa. 2021).  "Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the [orphans'] court's ruling unless it has discerned an error of law or abuse of discretion."  ***In re Adoption of L.A.K.***, 265 A.3d 580, 591 (Pa. 2021).[10]

---

[9] The orphans' court also denied Appellants' petition under section 2511(a)(8). However, Appellants do not raise an issue with respect to this subsection in their statement of questions involved in their brief and concise statement of errors complained of on appeal.  Therefore, they have waived any claim regarding section 2511(a)(8), and we do not review it.  ***See In re M.Z.T.M.W.***, 163 A.3d at 466.

[10] "An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion," or "the facts could support an opposite result."  ***In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa. 2012). Instead, an appellate court may reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will."  ***Id***. at 826.  This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.  ***See Interest of S.K.L.R.***, 256 A.3d at 1123-24.

In termination of parental rights cases, the orphans' court must initially determine whether the conduct of the parent warrants termination under section 2511(a). Only if the court determines that the petitioner established grounds for termination under section 2511(a) does it consider section 2511(b), which involves a child's needs and welfare. *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). To involuntarily terminate parental rights, the petitioner must prove grounds under both section 2511(a) and (b) by clear and convincing evidence, that is, evidence that is so "clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *C.M.*, 255 A.3d at 358 (internal citation and quotations omitted).

Section 2511(a) provides, in relevant part, as follows:

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \* \*

23 Pa.C.S.A § 2511(a)(1), (2), (5).

With respect to section 2511(a)(1), our Supreme Court has held,

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to [s]ection 2511(b).

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1998). Further,

the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re N.M.B.*, 856 A.2d 847, 854-855 (Pa. Super. 2004) (internal citations omitted).

Our Supreme Court has explained that parental duty "is best understood in relation to the needs of a child." *In re Burns*, 379 A.2d 535, 540 (Pa. 1977).

- 11 -

> A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life.'

*Id*. (citations omitted); *see also In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003).

Where a parent is incarcerated, this Court has held: "[E]vidence of the "incarceration of a parent does not, in itself, provide sufficient grounds for termination of parental rights; [the parent] must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *In re C.B.*, 230 A.3d 341, 351–52 (Pa. Super. 2020) (internal citation and quotations omitted).

In *In re Adoption of S.P.* and *In re Adoption of McCray*, 331 A.2d 652 (Pa. 1975), our Supreme Court considered the issue of incarceration's effect on abandonment, pursuant to section 2511(a)(1). The *S.P.* Court stated that a parent has an affirmative duty to love, protect, and support his child, and to make an effort to maintain communication with that child, though a parent's incarceration makes performance of this duty more difficult. *See In re Adoption of S.P.*, 47 A.3d at 828. The *S.P.* Court continued:

> [A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of

- 12 -

> abandonment.  Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration.  ***Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child.***  Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

*Id*. (emphasis added; internal citation omitted).

To terminate parental rights pursuant to section 2511(a)(2), the following factors must be demonstrated: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.  ***See In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003).[11]

Finally, to terminate parental rights pursuant to section 2511(a)(5), the following factors must be demonstrated:  (1) the child has been removed from parental care for at least six months; (2) the conditions which led to the child's

---

[11] The ***S.P.*** Court also addressed the relevance of incarceration in termination decisions under section 2511(a)(2).  The Court held that "incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under [section] 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied." ***In re Adoption of S.P.***, 47 A.3d at 828.

removal or placement continue to exist; (3) the parents cannot or will not remedy the conditions which led to removal or placement within a reasonable period of time; (4) the services reasonably available to the parents are unlikely to remedy the conditions which led to removal or placement within a reasonable period of time; and (5) termination of parental rights would best serve the needs and welfare of the child. *See In re Adoption of M.E.P.*, 825 A.2d at 1273-74. Incarceration alone is not sufficient to support termination under any subsection of section 2511(a). *See In re C.B.*, 230 A.2d at 352.

Appellants argue the orphans' court erred in denying the petition because grounds existed for termination of Father's parental rights pursuant to section 2511(a)(1): Father has evidenced a settled purpose of relinquishing his parental rights because he did not provide financial support to Child; send birthday cards and presents or Christmas presents; or perform parental duties for the Child's "entire life." Appellants' Brief at 13-14. In support of their section 2511(a)(2) argument, Appellants largely cite the same facts, along with Father's "lengthy criminal history," his asserted failure to attempt to obtain custody of Child, and the fact that—owing to his incarceration—he has been unable to care for or develop a relationship with Child. *See id*. at 15-17. Because of Father's incarceration, Appellants also argue section 2511(a)(5) is satisfied. *See id*. at 17-18.

Here, the orphans' court considered Appellants' assertions and concluded they did not militate in favor of termination:

This [c]ourt finds that [Father] has not demonstrated a settled purpose of relinquishing his parental claim to [Child]. In addition, this [c]ourt finds that [Father] had and has a sincere interest and desire to remedy the relationship and bond with [C]hild as it relates to the circumstances that has caused his absence from [C]hild's life, namely his incarceration. Father is due to be released from incarceration with the Pennsylvania Department of Corrections on or about August 28, 2023. [Indeed,] Father, prior to the hearing held in the [involuntary termination matter i]n July [] 2023, was participating in the pending custody modification proceedings at Elk County Civil Docket No. 2021-397.

\* \* \* \*

[A f]air inference may be drawn that by way of Father communicating by letters with Mother prior to her death on January 15, 2023, as well as other actions by Father while incarcerated based upon the court's Findings of Fact, that [Father] reasonably and objectively believed he was maintaining some parenting relationship and interest with [Child].

Orphans' Court Opinion, 12/29/23, at 10-12. Further, the court concluded that terminating Father's parental rights would not be "in the present best interest or best serve the developmental, physical, and emotional needs and welfare" of Child. *Id*. at 11.

Following our review, we discern no abuse of discretion by the orphans' court. In this case, the court made credibility determinations in favor of Father, which are supported by the record. Specifically, Father testified that, both at Westmoreland County prison, where he was incarcerated until November 23, 2022, and subsequently at SCI–Laurel Highlands, he had instances where his receipt of "legal mail" was confiscated. *See* N.T.,

- 15 -

7/27/23, at 66-69, 94.[12]  Father introduced into evidence, and the court accepted, a document indicating that Father's legal mail "has been confiscated" and "returned to sender" due to "No CCN."  *Id*. at Resp't's Ex. B; *see also id*. at 90 (Father's testimony that he did not receive any of his "legal mail" at Westmoreland County prison "until after 3-15-22.").  Father testified on cross-examination that he never "knew anything of those [custody] hearings until they were all said and done."  *Id*. at 89.

Additionally, Father testified that he wrote to Maternal Grandfather's counsel on April 5, 2023, advising that he had written to Maternal Grandfather "to ask permission to see my daughter on Zoom.  I gave [Maternal Grandfather] the jail's app of the website. . . .  [Maternal Grandfather] is cleared for my visiting list as well as [Maternal Grandmother]."  *Id*. at 66.  Father testified that he had written to Maternal Grandfather approximately two or three weeks prior to April 5, 2023.  *Id*. at 95.  On cross-examination by the attorney-GAL, Father read the written response from Maternal Grandfather's counsel as follows:

> [T]hey responded that they received my letter April 5, 2023.  We have a hearing scheduled for May 18, 2023, at 2:30 p.m. regarding this matter.  Further, pursuant to the current custody order dated February 28, 2022, [Maternal Grandfather] was vested with shared physical custody of the minor child with the deceased [Mother].  There are no periods of custody vested to you

---

[12] Father explained that his "legal mail has been confiscated due to . . . No CCN number attached to it."  *Id*. at 67.  He did not define "CCN number" or elaborate with respect to its purpose in the prison mail system.

pursuant to this custody order, and I have advised my client to follow this custody order. . . .

*Id*. at 66, 100-101. Father testified, "it's my recollection I never had received no court order stating that I could not see my daughter or communicate with my daughter." *Id*. at 66. Following Father's correspondence seeking Zoom visits with Child, Appellants petitioned to terminate his parental rights.[13]

In addition, Father testified that, for purposes of maintaining contact with Child, he wrote to Mother "at least twice a month" while he was at Westmoreland County prison. *Id*. at 74. Maternal Grandmother testified that she "clean[ed] out" Mother's house after Mother's death, and found three or four letters sent to Mother from Father while he was incarcerated. *Id*. at 103-104. Maternal Grandmother also expressed her belief, based on assertions by Father and Mother, that Father had bought gifts for Child. *See id*. at 108.

Given the orphans' court's findings of fact and credibility determinations in favor of Father, we discern no error of law or abuse of discretion in its conclusion that Appellants failed to prove that Father's conduct warranted the termination of his parental rights pursuant to section 2511(a)(1), (2), or (5). With respect to section (a)(1): within six months immediately preceding Appellants' filing of the termination petition, Father had contacted Maternal

---

[13] In closing, Child's GAL opined that Father's testimony about the timing of his correspondence with Maternal Grandfather and Maternal Grandfather's counsel "seem[ed] credible," and the timing of the termination petition was "a little concerning . . .." N.T., 7/27/23, at 111-12.

Grandfather as well as counsel for Maternal Grandfather requesting Zoom calls with Child, and he evidenced the intent to participate in the custody case by filing a motion for continuance of the oral argument on the preliminary objections.

Further, there is no dispute that Father's maximum sentence of incarceration was to expire only one month after the termination proceeding. Indeed, Father testified that he would have no further restrictions on his freedom after August 28, 2023. *See* N.T., 7/27/23, at 73. Father testified that he obtained his "flaggers license through this incarceration," and he planned to work as a highway traffic flagger upon his release from prison. *Id*. Thus, because Father's incarceration would be remedied in one month from the termination proceeding, we discern no abuse of discretion by the court in not terminating his parental rights. Accordingly, Appellants' third, fourth, and fifth issues fail.

In their sixth issue, Appellants argue that the orphans' court erred and/or abused its discretion in concluding that Child's developmental, physical, and emotional needs and welfare under section 2511(b) will be served by denying their petition seeking the involuntary termination of Father's parental rights.[14] However, since the orphans' court concluded that

---

[14] Section 2511(b) provides, in part, that [t]he court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. . . .." 23 Pa.C.S.A. § 2511(b).

Appellants did not satisfy their evidentiary burden under section 2511(a), it was not required to consider Child's developmental, physical, and emotional needs and welfare under section 2511(b). **See In re T.S.M.**, 71 A.3d at 267 (stating that only if the court determines that the petitioner established grounds for termination under section 2511(a) does it then engage in assessing the petition under section 2511(b)). Therefore, to the extent that the court also decided Appellants' petition under section 2511(b), we need not consider it.

In their seventh and final issue, Appellants assert that the orphans' court erred by considering "due process" concerns relating to whether Father was served with a copy of the February 2022 custody order, which might have affected his ability to participate in the custody proceedings. Appellants' Brief at 12.

We conclude that Appellants have waived this argument for failure to develop it with citations to relevant authority or in any other meaningful fashion capable of review. **See In re M.Z.T.M.W.**, 163 A.3d at 465-66.

In sum: because none of Appellants' preserved issues merit relief, we affirm the order denying their petition to terminate Father's parental rights to Child.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

7/19/2024