J-S21016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: | IN THE SUPERIOR COURT OF |
| L.M., MINOR CHILD | PENNSYLVANIA |

APPEAL OF: C.M., MOTHER

No. 2935 EDA 2015

Appeal from the Order Entered August 26, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000523-2015

BEFORE: BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.: **FILED July 1, 2016**

C.M. ("Mother") appeals from the order entered in the Court of Common Pleas of Philadelphia County involuntarily terminating her parental rights to her daughter, L.M., born March 2013, pursuant to 23 Pa.C.S. § 2511(a)(1), (2) (5), (8) and 23 Pa.C.S. § 2511(b).[1] Mother filed a *pro se* appeal and a *pro se* statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[2] The court appointed counsel for Mother, and counsel

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The court also terminated Father's parental rights by order dated August 26, 2015. Father did not file an appeal.

[2] Mother's Rule 1925(b) statement provides:

> Judge Irvine didn't read any of my paperwork on the 9th month of the case for L.M. [H]e never asked my side of the story. He never lets me talk. James W. Martin never speaks. Beverly Muldrow gave up on L.M. and didn't want to file for appeal. DHS worker stated that all of the DHS workers were dead and didn't

*(Footnote Continued Next Page)*

filed an appellate brief. Counsel filed a brief on behalf of Mother, which did not comply with the Pennsylvania Rules of Appellate Procedure. *See* Pa.R.A.P. 2111-2135. On April 21, 2016, we ordered counsel to file an appellate brief in accordance with our rules of court. Counsel has substantially complied with this order. After our review, we affirm.

On appeal, we address whether the Department of Human Services (DHS) met its burden of establishing by clear and convincing evidence the statutory grounds for termination, whether the trial court adequately examined the parent-child bond and whether termination was in L.M.'s best interests.[3]

Our review is governed by the following principles:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for

---
*(Footnote Continued)* ─────────────

> have anyone to bring in my child. CUA never showed me the paperwork proving they had custody of my child. ARC and DHS parenting classes and anger management didn't give me credit for my classes. DHS didn't investigate their case and came to my house eight hours after the doctor appointment. They didn't let me read their paperwork. They lied and said my daughter lost weight when she weighed 13.5 pounds and ounces. I weighed my daughter before the doctor came in. Michael Joyce said I couldn't be a mom without a job.

Mother's *Pro Se* Pa.R.A.P. 1925(b) Statement, 9/11/15.

[3] We adopt Appellee's counter-statement of questions involved because Appellant's Statement of Questions Presented is, in a word, inappropriate; it does not present an issue to be resolved but merely repeats Mother's *pro se* Rule 1925(b) Statement. *See* note 2, *supra*.

termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. [T]here are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Termination of parental rights is governed by section 2511 of the Adoption Act,[4] which requires a bifurcated analysis:

---

[4] 23 Pa.C.S. §§ 2101-2910.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

L.M. entered foster care at the age of six months. Mother was restricting L.M.'s intake of formula, causing L.M. to lose weight. N.T. Goal Change/Termination Hearing, 8/26/15, at 8. Mother was diagnosed with severe schizophrenia, *id.* at 8, and was not compliant with mental health, drug and alcohol and visitation objectives. *Id.* at 15-16.

At permanency review hearings in February and May of 2014, Mother was referred to the Clinical Evaluation Unit (CEU). She did not comply with the court's order for a CEU assessment; she did, however, receive mental health services and drug and alcohol services.

At the October 15, 2014 permanency review hearing, Mother was unavailable as she was incarcerated, having been charged with aggravated assault and possessing an instrument of crime, as well as related charges. *See* Permanency Review Order, 1015/14, DHS exhibit 2. At the April 1, 2015 permanency review hearing, which Mother attended, the court referred her again to the CEU for drug screenings and five random screens prior to

the next court date, which was listed for a goal change/termination proceeding.

Mother did not attend the goal change/termination proceeding on August 26, 2015. At that hearing, DHS presented the testimony of Caseworker Nadiyah Beard, who testified Mother was not in mental health treatment or receiving any medication, that she refused to submit to the court ordered random drug screens, was not currently participating in drug and alcohol treatment, and had failed to comply with her visitation schedule. N.T. Goal Change/Termination Hearing, 826/15, at 8-10, 17-19.

Caseworker Beard also testified to the following: Mother and L.M. are not bonded; Mother lacks the mental stability to care for L.M.; Mother's mental instability has compromised L.M.'s wellbeing; and, L.M. is very bonded to her pre-adoptive foster parent, with whom she has lived for two years. *Id.* at 11, 18. Caseworker Beard testified that termination of Mother's parental rights would not adversely affect L.M. and that adoption was in L.M.'s best interests. *Id.* at 11-12, 20.

Following the hearing, the trial court terminated Mother's parental rights pursuant to sections 2511(a)(1), (2), (5), (8) and 2511(b). "[W]e need only agree with [the trial court's] decision as to any one subsection [of 2511(a)] in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc).

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at

least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. *In re Adoption of R.J.S.*, 901 A.2d 502, 510 (Pa. Super. 2006). In addition, the court shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. 23 Pa.C.S. § 2511(b).

The court concluded that Mother failed to perform parental duties for the child for the period of six months prior to the filing of the petition for termination, and that no bond had developed between Mother and L.M. The record confirms that Mother has not benefited from the treatment she has received, and that her mental health issues, her drug and alcohol issues, and her lack of parenting skills has rendered her incapable of parenting L.M. and has compromised L.M.'s health and well-being. We agree with the trial court that there are considerable uncertainties regarding Mother's ability to care for L.M.'s basic needs. We conclude, therefore, that DHS has met its burden of establishing termination under section 2511(a)(1), and that termination would best serve the developmental, physical and emotional needs and welfare of the child. 23 Pa.C.S. § 2511(b). *See In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). *See also In re E.M.*, 620 A.2d 481, 485 (Pa. 1993) (determination of child's needs and welfare requires

consideration of emotional bonds between parent and child and "utmost attention" should be paid to discerning effect on child of permanently severing parental bond). Our review of the record reveals that the trial court's decision to terminate Mother's parental rights under sections 2511(a)(1) and (b), is supported by clear and convincing evidence, and that the trial court did not abuse its discretion. *In re Adoption of S.P.*, *supra*. The competent evidence in the record supports the court's determination that the termination of Mother's parental rights to L.M. is in L.M.'s best interests, and that L.M. would not suffer any harm from the termination of Mother's parental rights.

Accordingly, we affirm the trial court's order termination Mother's parental rights to L.M.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/1/2016