J-A05036-17

2017 PA Super 124

| IN THE INTEREST OF: H.K., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: R.L., FATHER | No. 1201 WDA 2016 |

Appeal from the Order Entered July 11, 2016
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-DP-0001429-2014

| IN THE INTEREST OF: H.K., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: R.L., FATHER | No. 1416 WDA 2016 |

Appeal from the Order Entered August 24, 2016
In the Court of Common Pleas of Allegheny County
Family Court at No(s): CP-02-AP-000063-2016

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MOULTON, J.

OPINION BY MOULTON, J.:                                    **FILED APRIL 28, 2017**

Appellant R.L. ("Father") appeals from the July 11, 2016 permanency review order and from the August 24, 2016 order terminating his parental rights to his child, H.K., born in July 2014 ("Child"), under 23 Pa.C.S. §

2511(a)(1), (2), and (b). We conclude that Father lacks standing to challenge the July 11, 2016 permanency review order and, therefore, dismiss his appeal from that order, docketed at 1201 WDA 2016. We affirm the August 21, 2016 order terminating Father's parental rights, docketed at 1416 WDA 2016.

The trial court set forth the following factual background:

[Child] is a two year old child, who has only lived in the home of her foster parents, having been placed with them upon her discharge from the hospital when she was two weeks old. She had spent the first thirteen days of her young life detoxing: Mother had tested positive for Subutex. She does not know or have a relationship with her [paternal] grandparents. Mother named R.L. as the alleged Father shortly before the child was adjudicated dependent on August 25, 2014. Father R.L. is currently incarcerated. He did not sign an acknowledgement of paternity, nor was his name on the birth certificate. Father took a genetic test in November 2014; he was determined to be the child's biological Father on December 11, 2014. From January 2015 to April 2016, Father did not have any contact with [the Office of Children Youth and Families ("CYF")] or the Court despite receiving notice at his place of incarceration. He did not hire an attorney, nor ask for visitation, nor participate in court hearings. Mother signed to voluntarily terminate her parental rights on April 15, 2016.

Only after the [termination of parental rights] petition was filed, did Father seek counsel; counsel entered her appearance on April 4, 2016. Counsel's first appearance on behalf of Father was at the July 11, 2016 permanency review hearing. Paternal Grandparents filed a "Grandparent Complaint for Custody" in April; their request for visitation and issues related to custody were ultimately deferred to the July 11, 2016 permanency review hearing. *See* Order of Court, dated June 16, 2016.

Opinion, 9/26/2016, at 1-2 ("PRO 1925(a) Op."). On July 11, 2016, the trial court held a permanency review hearing and a hearing addressing Grandparent's request for custody.

Following this hearing, the trial court found Child "shall remain with" her foster parents. Perm. Rev. Order at 4. The Court further found that CYF shall "Offer Family Team Conferencing and Act 101 Mediation to foster parents[.] NO visitation shall be scheduled with paternal grandparents . . . without approaching the court." *Id.* On August 11, 2016, Father filed a notice of appeal from the permanency review order, which was docketed at 1201 WDA 2016.

On March 29, 2016, CYF filed a petition to terminate Father's parental rights. On August 24, 2016, the trial court conducted a hearing on this petition and terminated Father's parental rights pursuant to section 2511(a)(1) and (2) and (b).[1] On September 23, 2016, Father filed a notice of appeal, which was docketed at 1416 WDA 2016. On October 11, 2016, this Court consolidated the appeals *sua sponte*.[2]

_____

[1] On April 1, 2016, Mother signed a written consent to the adoption of Child. On August 24, 2016, the trial court confirmed the consent and terminated Mother's parental rights. Mother did not appeal from that order.

[2] The trial court issued two opinions pursuant to Pennsylvania Rule of Appellate Procedure 1925(a). On September 26, 2016, the trial court issued its opinion as to the appeal of the July 11, 2016 permanency review order. PRO 1925(a) Op. On November 7, 2016, it issued its opinion in support of the order terminating Father's parental rights. Opinion, 11/7/16 ("Termination 1925(a) Op.").

Father raises the following issues on appeal:

I. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND/OR ABUSED ITS DISCRETION IN FINDING THAT AFTER PATERNITY WAS ESTABLISHED IN DECEMBER 2014, "CYF DID ONGOING FF["] (FAMILY FINDING) ["]WORKING WITH THE FATHER["]?

II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND/OR ABUSED ITS DISCRETION IN FINDING "APRIL 2016 [PATERNAL GRANDPARENTS] FIRST CONTACTED CYF AND THAT IS THE FIRST TIME CYF WAS AWARE THEY EXISTED"?

III. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND/OR ABUSED ITS DISCRETION . . . IN NOT ALLOWING VISITATION WITH THE PATERNAL GRANDPARENTS OF [CHILD] OUTSIDE THE SCOPE OF ACT 101 MEDIATION?

IV. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND/OR ABUSED ITS DISCRETION IN RULING "IT WOULD BE TRAUMATIC TO [CHILD] BOTH TO BE REUNI[TED] WITH OR INTRODUCED TO PEOPLE SHE DOES NOT KNOW, GIVEN HER CURRENT AGE AND HER CURRENT LEVEL OF [ST]ABILITY WITH HER CURRENT FOSTER PARENTS["]?

V. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND/OR ABUSED ITS DISCRETION IN FINDING IN RULING THAT THE COURT IS NOT REQUIRED TO CONSIDER REASONABLE EFFORTS IN A HEARING TO INVOLUNTARILY TERMINATE PARENTAL RIGHTS OF FATHER, R. L.?

VI. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND/OR ABUSED ITS DISCRETION IN FINDING CHILDREN, YOUTH AND FAMILIES PROVED BY CLEAR AND CONVINCING EVIDENCE THAT TERMINATING THE PARENTAL RIGHTS OF R. L. BEST MEETS THE NEEDS AND WELFARE OF [CHILD], THE MINOR CHILD IN THIS MATTER?

Father's Br. at 1-2.

### 1. Appeal of the July 11, 2016 Permanency Review Order (1201 WDA 2016)

Father's first four issues attempt to challenge findings the trial court made in the July 11, 2016 permanency review order. We conclude that Father lacks standing to contest these findings, which address whether Grandparents had a right to custody of, or visitation with, Child.

Father challenges the trial court's findings that: CYF did family finding; CYF first learned of Grandparents when they contacted the agency in April 2016; and it would be traumatic for Child to be reunited with or introduced to Grandparents. He also challenges whether the court erred in not allowing visitation with Grandparents outside of Act 101 mediation.[3]

_____

[3] Act No. 2010-101 amended the Adoption Act, by, among other things, providing for continuing contact with birth relatives. 2010 Pa. Legis. Serv. Act 2010-101 (S.B. 1360). The statute provides:

> The purpose of this subchapter is to provide an option for adoptive parents and birth relatives to enter into a voluntary agreement for ongoing communication or contact that:
>
> (1) is in the best interest of the child;
>
> (2) recognizes the parties' interests and desires for ongoing communication or contact;
>
> (3) is appropriate given the role of the parties in the child's life; and
>
> (4) is subject to approval by the courts.

23 Pa.C.S. § 2731.

Pennsylvania Rule of Appellate Procedure 501 states: "Except where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom."[4] The Pennsylvania Supreme Court has explained:

> "Aggrieved person" has acquired a particular meaning in the law. In **William Penn [Parking Garage, Inc. v. Pittsburgh**], we explained that the core concept of standing was that a party had to be "aggrieved." [346 A.2d 269, 280-81 (Pa. 1975)]. And, "aggrieved" when used in terms of standing is generally understood to mean that the person "has a substantial, direct and immediate interest in the claim sought to be litigated" as set forth in **William Penn**.

**Spahn v. Zoning Bd. of Adjustment**, 977 A.2d 1132, 1149 (Pa. 2009).[5]

Father was not aggrieved by the July 11, 2016 permanency review order, as he has no substantial, direct, or immediate interest in the issues on appeal. Father's arguments focus on how the alleged lack of family finding affected Grandparents' rights, how Grandparents should have been awarded visitation, and that the court erred in finding that it would be traumatic for

_____

[4] Both Child's guardian *ad litem* and CYF argue that Father lacks standing to challenge the July 11, 2016 permanency review order.

[5] Pursuant to **William Penn**, the requirement of a substantial interest means "there must be some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law." 346 A.2d at 282. To establish a direct interest, the party "must show causation of the harm to his interest by the matter of which he complains." **Id.** To establish that interest is immediate, the party must show a "sufficiently close causal connection between the challenged action and the asserted injury to qualify the interest as 'immediate' rather than 'remote.'" **Id.** at 286.

Child to meet Grandparents. Father does not assert that the court's July 11, 2016 order in any way affected his rights as to Child or affected his ability to visit or communicate with Child.[6] Further, during the pendency of the appeal, the trial court terminated Father's parental rights,[7] and he no longer has the "power or the right . . . to object to . . . adoption proceedings." 23 Pa.C.S. § 2521(a); *see also In re Adoption of G.R.L.*, 26 A.3d 1124, 1130 (Pa.Super. 2011) (noting "[p]arents no longer have any input regarding an adoptive placement for Children, where the court has terminated their

_____

[6] The stated legislative intent for the adoption of the Family Finding and Kinship Care Act, which Father cites in his brief, is as follows:

> [T]o promote the use of kinship care when it is necessary to remove a child from the child's home in an effort to:
>
> (1) Identify and build positive connections between the child and the child's relatives and kin.
>
> (2) Support the engagement of relatives and kin in children and youth social service planning and delivery.
>
> (3) Create a network of extended family support to assist in remedying the concerns that led the child to be involved with the county agency.

62 P.S. § 1301. Father concedes "he was not deprived of the support of his family and friends because CYF failed to conduct family findings." Father's Br. at 18. Rather, he argues that "because CYF failed to conduct family findings and conduct a diligent search for relatives of his daughter," Child "was deprived of building positive connections" with "her relatives and kin." *Id.* at 18-19. He notes that although he "has not been proactive in fostering a relationship with his child he wants his child to have an opportunity to know his family." *Id.* at 19.

[7] As discussed below, we affirm the trial court's termination of Father's parental rights.

- 7 -

parental rights and Parents have not challenged the court's specific findings in support of termination").[8]

Accordingly, we dismiss Father's appeal of the July 11, 2016 permanency review order for lack of standing.[9]

## 2. Appeal of the August 23, 2016 Order Terminating Father's Parental Rights (1416 WDA 2016)

We will next address Father's appeal of the August 23, 2016 order terminating his parental rights.[10]

Father maintains that the trial court erred in finding that the trial court was not required to consider CYF's reasonable efforts prior to terminating his

---

[8] Grandparents appealed from the trial court's order denying their custody complaint, raising the same issues Father raised in his appeal of the permanency review order. Grandparents' appeal is docketed at 1315 WDA 2016.

[9] We do not hold that a parent may never have standing to challenge a trial court's order granting or denying custody to a family member. Rather, we conclude that, under the circumstances of this case, Father has failed to establish that he was aggrieved by the findings that affected Grandparent's ability to visit Child.

[10] The trial court had jurisdiction to address the petition to terminate Father's parental rights while Father's appeal of the permanency review order was pending. The appeal of the permanency review order addressed Grandparents' rights to visitation and custody, which, in this case, is a separate issue from whether Father's parental rights should be terminated. *See* Pa.R.A.P. 1701(c) ("Where only a particular item, claim or assessment adjudged in the matter is involved in an appeal, . . . the appeal . . . shall operate to prevent the trial court . . . from proceeding further with only such item, claim or assessment, unless otherwise ordered by the trial court or other government unit or by the appellate court or a judge thereof as necessary to preserve the rights of the appellant").

parental rights. He claims that he attempted to elicit testimony regarding CYF's efforts to contact Father and his family, but the trial court sustained an objection to the questions.

As this Court has stated:

> Our standard of review with respect to a trial court's evidentiary rulings is deferential. The admission of evidence is within the discretion of the trial court and such decisions will be reversed only if the trial court has abused its discretion.

*In re Adoption of R.K.Y.*, 72 A.3d 669, 675 (Pa.Super. 2013) (citations omitted).

In *In re D.C.D.*, the Pennsylvania Supreme Court stated:

> Neither subsection (a) nor (b)[11] requires a court to consider the reasonable efforts provided to a parent prior to termination of parental rights. Nevertheless, this Court has observed that the provision or absence of reasonable efforts may be relevant to a court's consideration of both the grounds for termination and the best interests of the child. [*In re Adoption of S.E.G.,* 901 A.2d 1017, 1029 (Pa. 2006)]. For example, as applicable to subsection (a)(2), a court may find an agency's lack of assistance to a parent relevant to whether a parent's incapacity "cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2). Indeed, we agree with Father, at least in a situation involving a strong bond between parent and child prior to incarceration and a short term of incarceration, that a child welfare agency cannot refuse reasonable efforts to an incarcerated parent and then point to the resulting erosion in the parental bond created by the agency as justification for termination of parental rights. The fact that such a scenario can be articulated, however,

_____

[11] 23 Pa.C.S. § 2511(a) and (b) provide the grounds for involuntary termination of parental rights.

- 9 -

does not transform the provision of reasonable efforts to reunite parents and children into a requirement for termination.

105 A.3d 662, 672 (Pa. 2014). The Court concluded that although "reasonable efforts should be considered and indeed, in the appropriate case, a trial court could insist upon their provision, we hold that nothing in the language or the purpose of Section 6351(f)(9) forbids the granting of a petition to terminate parental rights, under Section 2511, as a consequence of the agency's failure to provide reasonable efforts to a parent." *Id.* at 675.

Father does not cite the portion of the testimony to which he refers in his brief. It appears he is referencing an exchange during the cross-examination of Elizabeth Reiter, a CYF casework supervisor, where the trial court sustained an objection to the following question:

Q: And did the agency determine that it was appropriate for [Grandparents] to have contact with [Child]?

N.T., 8/24/16, at 57-59. Evidence regarding the reasonable efforts CYF made to help a parent reunite with his or her children may be relevant for a determination as to termination of parental rights. *See In re D.C.D.,* 105 A.3d at 672. Here, the trial court heard testimony regarding CYF's efforts to contact Father, and found Father not credible when he testified that he did not receive the communications. N.T., 8/24/16, at 121. The court further found that "Father largely eschewed all CYF inquiry and communication until he received notice that CYF filed a petition to terminate his rights."

Termination 1925(a) Op. at 6. It was not an abuse of the trial court's discretion to preclude testimony regarding CYF's efforts to find Father's family when determining whether to terminate Father's parental rights.

Father next maintains that the trial court erred in finding that terminating his parental rights meets the needs and welfare of Child.

We apply the following standard when reviewing an order terminating a parent's parental rights:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. [A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted) (alteration in original).

The Pennsylvania Supreme Court has explained the reason for applying an abuse of discretion standard to termination decisions:

> [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an

- 11 -

appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (internal citation omitted).

The trial court terminated Father's parental rights pursuant to sections 2511(a)(1), (2), and (b), which provide:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), and (b).

Father does not contest that termination was proper under sections 2511(a)(1) and (2). Rather, Father claims that the court erred in finding that terminating his parental rights would be in Child's best interest. He argues that the trial court failed to consider "other considerations" that affect the needs and welfare of Child because it failed to consider CYF's efforts to conduct family finding. He further maintains that knowing her biological family would be in Child's best interest.

The focus in terminating parental rights under section 2511(b) is not on the parent, but on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa.Super. 2008) (*en banc*). Pursuant to section 2511(b), the trial court must determine "whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1286 (Pa.Super. 2005). As this Court stated, "a child's life 'simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.'" *In re Z.S.W.*, 946 A.2d 726, 732 (Pa.Super. 2008) (quoting *In re Adoption of M.E.P.,* 825 A.2d 1266, 1276 (Pa.Super.2003)). Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a

permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa.Super. 2004).

This Court has explained that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d at 1287. Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id*. (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008).

The trial court found:

> Father argues that termination would not best meet the needs and welfare of the child. *See* Statement of Error at Paragraph 5. The child, having had to spend the first month of her life in the hospital, has never known either of [her] biological parents. When . . . she was released from the hospital a month after her birth, she was placed in the home of her pre-adoptive foster parents. She is now two years old. Father has never met his child. At the TPR hearing, the parties stipulated to the admission of Dr. Neil Rosenblum's psychological evaluations. *See* CYF Exhibit 4. Dr. Rosenblum reported that the child has only known the home of the [pre-]adoptive foster parents. *See* Exhibit 4, Evaluation dated June 2, 2016, at 3. "Rather predictably [Child] has formed a very strong, primary and exclusive attachment to her foster parents." *Id.* Dr. Rosenblum reported that the child is "a very happy, emotionally secure little girl" who is "progressing extremely well in her development." *Id.* In Dr. Rosenblum's "clinical opinion

> this is a secure, highly supportive family environment which clearly offers [Child] the best opportunity for growing up in a stable, supportive environment that is capable of meeting her needs at this time and in the years to come." *Id.* In fact, Dr. Rosenblum reported that the child's removal from the pre-adoptive foster parents could "potentially expose [Child] to traumatic emotional experiences, pronounced adjustment difficulties and the possibility of an eventual attachment disorder." *Id.* The Court found [Child] to be securely bonded to her pre-adoptive foster patents. While Dr. Rosenblum did not meet with Father, it is clear that termination would be service the child's interests.

Termination 1925(a) Op. at 9. The trial court's findings are supported by the record, and it did not abuse its discretion in finding it would be in Child's best interest to terminate Father's parental rights. Any benefit Child may receive from knowing other biological family does not affect whether it would be in her best interests to terminate Father's parental rights. Further, any such benefit would not outweigh the evidence establishing that Child's best interest would be met by remaining with her foster parents. *See In re Adoption of G.R.L.*, 26 A.3d at 1127 (stating that "[t]he goal of preserving the family unit cannot be elevated above all other factors when considering the best interests of children, but must be weighed in conjunction with other factors"). Therefore, we affirm the trial court's order terminating Father's parental rights.

Father's appeal from the July 11, 2016 permanency review order (1201 WDA 2016) is dismissed. The August 24, 2016 order terminating Father's parental rights (1416 WDA 2016) is affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/28/2017</u>