J-S37017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.C.M.A., A/K/A A.A, A MINOR | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : : | |
| APPEAL OF: C.V.-B, MOTHER | : : : : : | |
| | : | No. 46 EDA 2018 |

Appeal from the Order November 8, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  51-FN-383088-2009,
CP-51-AP-0000622-2017, CP-51-DP-0000080-2016

BEFORE:   OLSON, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JULY 19, 2018**

C.V.-B. ("Mother") appeals from the order terminating her parental rights to A.C.M.A. a/k/a A.A. ("Child"). We conclude the trial court did not err or abuse its discretion in terminating Mother's parental rights and, therefore, affirm.

On January 12, 2016, the Philadelphia Department of Human Services ("DHS") filed a Dependency Petition for Child, alleging, among other things, that from June 2015 through the filing of the Petition, Mother and Child lacked stable housing, and, in December 2015, were residing in Maternal Grandmother's home, which lacked running water and had a tree protruding from the basement window. On February 9, 2016, the court held that Child was a dependent child, finding Child was "without proper care or control, subsistence, education as required by law, or other care or control necessary

_____
*   Former Justice specially assigned to the Superior Court.

for his physical, mental, or emotional health, or morals." Order of Adjudication and Disposition, 2/9/16.

Mother's Single Case Plan Objectives have included, but have not been limited to: obtain suitable housing, attend individual mental health therapy, attend anger management classes, attend drug and alcohol treatment, and attend visits with Child. N.T., 11/8/17, at 37.

On June 5, 2017, DHS filed a Petition for Involuntary Termination of Parental Rights. DHS noted that in September 2016, Mother twice tested positive for marijuana. Statement of Facts at ¶ at ¶ y-z.[1] At the time DHS filed the Petition, Mother had attended less than half of the visits offered, had not participated in mental health treatment, and was homeless. *Id.* at ¶ ee. Mother completed parenting classes, *id.* at ¶ bb, and attended NU-STOP Recovery and Educational Center, *id.* at ¶ ee.

At the hearing on the Petition, Govenina Ruffin, the Community Umbrella Agency ("CUA") case manager, testified. She stated that, prior to the filing of the Petition, Mother had not completed drug and alcohol treatment and had not provided consistent negative drug screens. *Id.* at 37-38. She stated that Mother started to attend The Wedge Recovery Centers ("Wedge") on September 21, 2017, that Mother attended 11 of the 22 groups offered to her at Wedge, and that, on October 19, 2017, Mother spoke to a psychiatrist

---

[1] Mother stipulated that the social worker would testify to the facts contained in the Statement of Facts if requested to testify to such at the hearing. N.T., 11/8/17, at 31-32.

there. *Id.* at 40. Ms. Ruffin further testified that Mother tested positive for cannabis on September 22, 2017 and October 19, 2017, and negative on November 2, 2017. N.T., 11/8/17, at 32. In addition, Mother had not completed anger management classes. *Id.* at 44. In the six months since the filing of the petition, Mother attended 16 of the 28 visits offered. *Id.* at 45.

Ms. Ruffin stated that Child is in a pre-adoptive foster home, Child shares her primary parent-child bond with her foster mother, and Child's foster mother provides her with love, safety, stability, and support. *Id.* at 49. She stated that, although Child did cry once following a visit with Mother, she was generally okay when separating from Mother. *Id.* at 50. Ms. Ruffin did not believe Child would suffer irreparable harm if Mother's parental rights were terminated. *Id.*

On cross-examination, Ms. Ruffin stated that, although requested by Ms. Ruffin, Mother had not provided paystubs, a letter from her employer, or a work schedule. *Id.* at 55. She further testified that Child and her foster family moved to Lancaster in August 2017. *Id.* at 60, 62.

In addition, Ms. Ruffin visited Mother's sister's ("D.B.") house. *Id.* at 64. She testified that the CUA could not proceed with the kindship care investigation of D.B. because D.B. could not provide paystubs. *Id.* at 65. She further noted the CUA was concerned because D.B. had a 2016 arrest for prostitution. *Id.* at 65

Mother also testified. She testified that Child wants to be with Mother and that Mother was trying to meet the objectives. *Id.* at 72. Mother believed

there was tension between the requirement that she provide housing and, therefore, work, and the time required to attend groups and therapy. *Id.* at 87-88. Mother further stated she worked full time for NHS Human Services, caring for clients with intellectual disability and mental health issues. *Id.* at 88. Mother takes all shifts offered in an effort to earn money. *Id.* at 90. She is also taking entrepreneur classes at Pierce College. *Id.* at 91. Mother stated she requested help with housing. *Id.* at 88.

During Mother's testimony, counsel began to ask her about the investigation into D.B. as a possible placement. *Id.* at 84. DHS objected based on relevance and noted Ms. Ruffin answered questions regarding the investigation during cross-examination. *Id.* at 85. The trial court sustained the objection. *Id.* Following the trial court's findings of fact, Mother's counsel stated: "In your findings of facts, you said that my client couldn't provide housing. It is one piece of the evidence that was objected to and sustained where I was trying to get in evidence about the room in D.B.'s house that is available for Child." *Id.* at 98. The trial court stated that he did not think, based on Ms. Ruffin's testimony and D.B.'s arrest for prostitution, that Child belonged in the house at that time. *Id.* at 99.

The trial court found that DHS proved, by clear and convincing evidence, that grounds for termination pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (b) existed. *Id.* at 97. The trial court noted Mother's on-going marijuana use, sporadic visitation history, and that there was no evidence of on-going mental health or drug and alcohol treatment. *Id.* It further noted that Mother

did not have housing for Child. *Id.* The court found that Mother's recent efforts were "too little too late." *Id.* at 97-98. The trial court further found that termination was in Child's best interest, noting the foster mother was performing the daily parental duties, and Child needed stability and continuity in her life. *Id.* at 98. The trial court granted the Petition for Involuntary Termination. Mother filed a timely notice of appeal.

Mother raises the following issues on appeal:

1. Did the Trial Court err in terminating [Mother's] parental rights because [DHS] did not establish by clear and convincing evidence that [Mother's] parental rights should be terminated pursuant to 23 Pa.C.S.A. [§§] 5211(a)(1), (2) and (5)?

2. Did the Trial Court err in terminating [Mother's] parental rights by disallowing Mother the right to present evidence to the court of alternative housing that was available within the family at the home of [Mother's] sister which could have remedied [Mother's] homeless status.

Mother's Br. at 5.

When reviewing orders terminating parental rights, we must "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). Where "the factual findings are supported," we review the decision "to determine if the trial court made an error of law or abused its discretion." *Id.* We will reverse a decision "for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.*

The Pennsylvania Supreme Court has explained the reason for applying an abuse of discretion standard to termination decisions:

> [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d at 826-27 (citations omitted).

Although the trial court terminated Mother's parental rights pursuant to several subsections of 2511(a), we need only conclude that its decision was proper under any one subsection of Section 2511(a), in addition to its finding as to Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we conclude that the trial court properly terminated Mother's parental rights pursuant to Sections 2511(a)(2) and (b).

We will first review the trial court's conclusion that termination was proper under Section 2511(a)(2), which provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To terminate parental rights pursuant to Section 2511(a)(2), the moving party must produce clear and convincing evidence of the following: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003).

The trial court found termination proper under Section 2511(a)(2). The court found Mother made "insufficient and inconsistent efforts to meet" her objectives. Trial Court Opinion, filed Feb. 16, 2018, at 4 ("TCO"). The court noted that Ms. Ruffin testified that Mother met only one objective, completion of a parenting class. *Id.* at 5-6. Mother, however, did not complete drug and alcohol treatment, and continued to test positive for drugs. *Id.* at 6. Mother also failed to verify that she received mental health treatment or attended anger management classes, was inconsistent with visitation, and lacked stable housing. *Id.*

Mother maintains she was unable to attend visits due to her work schedule and transportation issues. Mother's Br. at 7. Mother, however, failed to provide a work schedule to the CUA. N.T., 11/8/17, at 55. Further, to the extent Mother argues that Child's move to Lancaster inhibited her ability to visit Child, Child did not move until August 2017, after DHS filed the Petition.

*Id.* at 60. Further, to the extent Mother maintains she was unable to comply with the objectives due to her employment, we cannot conclude that the trial court, who heard the testimony, abused its discretion in finding termination proper.

We conclude the record supports the factual findings and the trial court did not err or abuse its discretion in terminating Mother's parental rights under Section 2511(a)(2). The evidence supported a finding that Mother had a continued incapacity that caused the child to be without the essential parental care, control or subsistence necessary for her physical or mental well-being, and that the cause of the incapacity could not or would not be remedied.[2]

---

[2] Mother does not argue on appeal that the trial court erred in finding that termination would best serve the Child's developmental, physical and emotional needs and welfare under Section 2511(b). Further, even if she did raise this issue, we would conclude it is meritless. Section 2511(b) provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.
> . . .

23 Pa.C.S.A. § 2511(b). Pursuant to Section 2511(b), the trial court must determine "whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1286 (Pa.Super. 2005).

The trial court concluded that terminating Mother's rights would be in Child's best interest. TCO at 5-7. The trial court noted that Ms. Ruffin testified Child was well-bonded with her foster mother, and that the foster mother met

Mother next argues the trial court improperly "curtailed counsel's attempt to present evidence that [Mother's] sister was in a position to provide housing for [Child] until [Mother] could get on her feet." Mother's Br.at 8.

The admission or exclusion of evidence is within the discretion of the trial court. *In the Int. of H.K.*, 161 A.3d 331, 337 (Pa.Super. 2017) (quoting *In re Adoption of R.K.Y.*, 72 A.3d 669, 675 (Pa.Super. 2013)).

Mother claims that the court erroneously prevented her from presenting evidence that D.B. had a room for Child. However, the court's sustaining of DHS's objection to the relevance of Mother's testimony on this issue was not an abuse of discretion. Earlier in the proceedings, Ms. Ruffin had explained that the CUA did not continue to investigate D.B. for kinship care because D.B. was unable to provide paystubs. Ms. Ruffin also noted there was concern because D.B. had a recent arrest for prostitution. In view of this testimony, we do not think the trial court abused its discretion in sustaining the objection. Indeed, when Mother's counsel later argued that he had been attempting to inform the court that D.B. would provide housing, the trial court responded that the housing with D.B. was not proper at that time. Mother at no time attempted to explain the testimony's relevance or make an offer of proof of

---

Child's medical and developmental needs. *Id.* at 6. Further, Ms. Ruffin had observed visits between Mother and Child and did not believe that termination of Mother's rights would cause irreparable harm to Child. *Id.* The record supports the trial court's findings of fact and the court did not err or abuse its discretion in finding that termination would best meet Child's developmental, physical and emotional needs and welfare.

the additional, relevant information Mother would provide on this issue. The trial court did not abuse its discretion.

Moreover, even if this ruling were error, it would be harmless. The lack of housing was not the sole basis for a finding of termination. Rather, as noted above, the trial court found that Mother failed to meet almost all of her objectives, including that she continued to test positive for marijuana and failed to attend visitations.[3]

Order affirmed.

Judge Olson joins the Memorandum.

P.J.E. Stevens concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/18

---

[3] At the conclusion of the hearing, Mother's counsel noted that members of the family would file petitions for adoption. N.T., 11/8/18, at 100. The court noted that that was an issue for the adoption court, and it was not before the court at the hearing. *Id.*