**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF M.A.G.-S., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.L.S., FATHER | : : : : : : | |
| | : | No. 1179 EDA 2021 |

Appeal from the Decree Entered March 24, 2021
In the Court of Common Pleas of Montgomery County
Orphans' Court at No: 2020-A0092

BEFORE:   STABILE, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.:                    **FILED DECEMBER 7, 2021**

D.L.S. (Father) appeals from the decree entered on March 24, 2021, in the Court of Common Pleas of Montgomery County, involuntarily terminating his parental rights to his daughter, M.A.G-S. (Child), born in June 2016.[1] Upon careful review, we affirm.

On July 14, 2020, Y.B. and N.B. (collectively, Appellees) filed the involuntary termination petition pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b), along with a report of intention to adopt. On September 8, 2020, Appellees filed a petition for adoption. Appellees averred that they were

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The court issued a separate decree involuntarily terminating the parental rights of M.G. (Mother). Mother filed a notice of appeal, docketed at 856 EDA 2021, which we address by separate memorandum.

granted primary custody of Child by custody order dated August 20, 2018, when she was twenty-two months old. In addition, they averred that Father, then incarcerated at State Correctional Institution (SCI) — Huntingdon, has seen Child only once in her life.

The court conducted an evidentiary hearing on January 21, 2021, *via* Zoom due to the COVID-19 pandemic. Mary C. Pugh, Esquire, served as Child's guardian *ad litem* (GAL) and legal counsel.[2] Y.B. and N.B. testified on their own behalf. Father and Mother testified, and Father presented the testimony of his sister, K.S. (Paternal Aunt).

Based on the testimonial evidence, the orphans' court found:

> From 2015, before [Child's] birth, to the present date, [F]ather has been incarcerated. (N.T.[, 1/21/21, at] 113, 3-12). He is serving a sentence with a minimum of eight years to a maximum of twenty years. As a result[,] his earliest release date could be in 2023, by which time [Child] will be seven years old. ([***Id.*** at] 113, 14-19). His maximum sentence of twenty years would result in a release date of 2035, by which time [Child] will be an adult of 19 years of age. ([***Id.*** at] 114, 3-5).

Orphans' Court Opinion, 3/24/21, at 8.

---

[2] The court determined that the legal and best interests of Child, then four years old, did not conflict. N.T., 1/21/21, at 46-47; ***see also In re K.M.G.***, 240 A.3d 1218 (Pa. 2020) (affirming ***In re K.M.G.***, 219 A.3d 662 (Pa. Super. 2019) (*en banc*) that appellate courts engage in *sua sponte* review to determine if an orphans' court has appointed counsel to represent the child's legal interests in a contested termination proceeding, in compliance with 23 Pa.C.S. § 2313(a). Further, where a guardian ad litem (GAL)/counsel was appointed to represent both the child's legal and best interests, appellate courts engage in *sua sponte* review to determine whether the orphans' court determined that those interests did not conflict.).

The evidence further revealed that Child has been in the physical custody of Appellees since November 2017, when Mother requested that they assume full custody of Child on a temporary basis while she entered an inpatient drug rehabilitation facility. Orphans' Court Opinion, 3/24/21, at 4 (citation to record omitted). Appellees were the next-door neighbors of Mother's father and his wife. *Id.* at 3.

Appellees maintained custody of Child until the spring or summer of 2018, when, as best we can discern, a custody action occurred between them and Paternal Aunt. On an unspecified date, the trial court awarded physical custody to Paternal Aunt, which lasted for five weeks. N.T., 1/21/21, at 54-55. In August 2018, Appellees filed a petition for custody.[3] Orphans' Court Opinion, 3/24/21, at 4 (citations to record omitted). By agreed-upon order dated August 20, 2018, the court awarded Appellees sole legal and primary physical custody of Child, and Paternal Aunt partial physical custody on alternating weekends and on alternating Thursdays.[4] Orphans' Court Opinion, 3/24/21, at 4; N.T., 1/21/21, at 50-52, 66. Throughout the case, Paternal Aunt exercised partial custody on alternating weekends only. N.T., 1/21/21,

_____

[3] The record does not specify whether Appellees filed a petition to modify custody, or if they initiated a new custody action.

[4] A custody conference was held, during which Father participated *via* video from prison. N.T., 1/21/21, at 99. The August 20, 2018 order prohibits Child from visiting Father or Mother in prison. *Id.* at 25, 106.

at 66. It was undisputed that, on Paternal Aunt's custodial weekends with Child, she also has partial custody of Father's son, Child's half-sibling. *Id.* at 68-69. There is no record evidence regarding the age of Child's half-sibling.

The orphans' court found, "During his time in prison, [F]ather has testified to calling his sister, [Paternal Aunt], in order to talk to [C]hild while [Paternal Aunt] has had visits with her every other week. (N.T.[, 1/21/21, at] 85, 8-15)." Orphans' Court Opinion, 3/24/21, at 8. In addition, Father testified that he mailed cards to Child at Paternal Aunt's address. *Id.* (citing N.T., 1/21/21, at 114, 9-24). Father never attempted to contact Child at Appellees' address or to discuss Child's well-being with Appellees. *Id.* at 8-9; N.T., 1/21/21, at 110-111.

By decree dated and entered on March 24, 2021, the orphans' court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b). The court accompanied the decree with an opinion. Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Father presents the following questions for review:

1. Did the [orphans'] court err in granting the [p]etition for [i]nvoluntary [t]ermination of [p]arental [r]ights of Father under 23 Pa.C.S. § 2511(a)(1)?

2. Did the [orphans'] court err in granting the [p]etition for [i]nvoluntary [t]ermination of [p]arental [r]ights of Father under 23 Pa.C.S. § 2511(a)(2)?

3. Did the [orphans'] court err in granting the [p]etition for [i]nvoluntary [t]ermination of [p]arental [r]ights of Father under 23 Pa.C.S. § 2511(b)?

Father's brief at 8.[5]

We review the involuntary termination decree for an abuse of discretion.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (citations omitted). This Court

has explained:

> [W]e must accept the findings of fact and credibility determinations of the orphans' court if the record supports them. ***T.S.M.***, 71 A.3d at 267. "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." ***Id.*** (citation omitted). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted). We may not reverse merely because the record could support a different result. ***T.S.M.***, 71 A.3d at 267. We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." ***Id.*** Moreover, "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." ***M.G.***, 855 A.2d [68,] 73-74 [Pa. Super. 2004] (citation omitted).

***In re K.M.G.***, 219 A.3d 662, 672 (Pa. Super. 2019) (*en banc*).

Termination of parental rights is governed by Section 2511 of the

Adoption Act, which requires a bifurcated analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing

---

[5] The GAL/counsel filed an appellee brief in support of the decree involuntarily terminating Father's parental rights.

- 5 -

evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d at 276.

We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we review the decree pursuant to Section 2511(a)(2) and (b),[6] which provide:

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

---

[6] Based on this disposition, we need not address Father's first issue on appeal which relates to Section 2511(a)(1).

. . .

> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

In *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012), our Supreme Court addressed the relevance of incarceration in termination decisions under Section 2511(a)(2). The Court held that "incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without

essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied." *Id.* at 828.

With respect to Section 2511(b), we have explained, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted). This Court has further stated, "the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)).

In this case, Father argues that Appellees failed to satisfy their burden of proof under Section 2511(a)(2). Specifically, Father argues that his incarceration is the only evidence of his inability to provide parental care, and that this is insufficient to terminate his parental rights. Father cites *In re J.L.C.*, 837 A.2d 1247, 1250 (Pa. Super. 2003), wherein this Court stated,

"the mere fact that a parent is in jail is not grounds to terminate parental rights. However, the mere fact that a parent is in jail does not mean that he can forego trying to maintain a bond with his children." *Id.* In that case, we did not review the termination orders pursuant to Section 2511(a)(2); rather, we reviewed them pursuant to Section 2511(a)(1) and (8). Therefore, we conclude that *J.L.C.* is inapposite to this case.

The controlling case law, as stated above, is our Supreme Court's decision in *S.P.*, *supra*, that "incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist" under Section 2511(a)(2). *S.P.*, 47 A.3d at 828. In *S.P.*, the father was sentenced to a term of incarceration of five to ten years, and he had been incarcerated, like in this case, prior to the child's birth; therefore, the father had never provided essential care to the child, who was then approximately four years old. Based on the totality of the facts, the trial court terminated the father's parental rights. The *S.P.* Court held that the trial court did not abuse its discretion or commit an error of law. The Court thereby reversed this Court and reinstated the order terminating the father's parental rights.

Here, the orphans' court found:

[F]ather has been incarcerated for the entire life of [Child] thus far. Currently, [F]ather faces a minimum sentence that may allow for his release in 2023[;] however, his maximum sentence would not allow for his release until 2035. Even if he is released at the earliest date in 2023, [F]ather's incarceration will have rendered him incapable of providing for [Child]'s essential needs for at least the first seven years of her life. If [F]ather served his maximum time, he will be released when [Child] is nineteen years of age and

- 9 -

> [F]ather will no longer be legally required to provide for her. As of today, all of [Child]'s needs have been met by Y.B. and N.B.[,] and [Child] cannot simply wait until she is a minimum of seven years of age before [F]ather is able to provide for her physical, emotional and mental well-being. While the court does not know if [F]ather will be capable of providing for [Child]'s essential needs upon his release from prison, he is currently incapable of providing for her needs and will continue to be incapable for some unknown time[-]period between two and fourteen more years.

Orphans' Court Opinion, 3/24/21, at 20. Father's testimony supports the court's findings. N.T., 1/21/21, at 113-114. The record demonstrates that Father's repeated and continued incapacity due to his incarceration has caused Child, for the entirety of her life, to be without essential parental care, control, or subsistence necessary for her physical or mental well-being. Because of his sentence of eight to twenty years, Father's incapacity cannot or will not be remedied. Thus, we discern no abuse of discretion by the orphans' court terminating Father's parental rights pursuant to Section 2511(a)(2).

In his last issue, Father argues that the court abused its discretion in terminating his parental rights pursuant to Section 2511(b). Father asserts that a bond has formed between him and Child due to (1) his telephone calls on Paternal Aunt's custodial weekends; (2) Paternal Aunt sharing photos of Father with Child; and (3) the cards he has mailed to Child at Paternal Aunt's address. In addition, Father argues that Appellees presented no expert evidence, including a bonding assessment, regarding the effect on Child of terminating his parental rights.

Further, Father asserts that Child has a bond with Paternal Aunt, who, during her alternating custodial weekends with Child, also has custody of Child's half-sibling. Father asserts that Child likewise has a bond with her half-sibling. He argues that Appellees presented no expert evidence of the effect on Child "of severing this familial bond." Father's brief at 21. Father's issues are without merit.

The orphans' court credited the testimony of Paternal Aunt and Father that Father telephones his sister biweekly during her custodial time with Child, and that Father speaks to Child each time he calls for approximately fifteen minutes. Orphans' Court Opinion, 3/24/21, at 24 (citing N.T., 1/21/21, at 102, 8-9; 70, 18-21). The court found that Child has not seen Father in person because of the August 20, 2018 agreed-upon custody order directing that none of the parties take Child to visit Father or Mother in prison. *Id.* (citing N.T., 1/21/21, at 15, 10-14).

The court found, "This is not a case where [F]ather once had a strong bond with child and then became incarcerated, causing the parent-child bond to wane. [F]ather here, due to his incarceration since before her birth, has never formed a parental bond with [Child]." *Id.* The court concluded, "a fifteen[-]minute phone call every other weekend is not enough to establish a meaningful parent-child bond where no prior bond existed. [F]ather has not established a relationship of importance in [C]hild's life. . . ." *Id.*

As such, the court concluded:

[F]ather does not have a parent-child bond with [Child]. . . . While [F]ather expresses a desire to be a parent to [Child] once he is released, the focus on the section 2511(b) analysis is on the child's best interests, not the desires of the parent.

[T]he court determines that it would not harm [Child] to sever the relationship between [her] and [F]ather. The only home . . . that [Child] has ever known has been with [Appellees]. . . . She has a loving, stable, and secure environment where all of her physical, emotional, and developmental needs have been and continue to be met. It is in [Child's] best interest to remain in the only home she's known. . . .

*Id.* at 25.

Upon review, we discern no abuse of discretion. On direct examination, Father acknowledged, "I got a little relationship with [Child] now, just not as strong as I want it to [be]." N.T., 1/21/21, at 94. Paternal Aunt testified that Child "knows of her dad. She's seen pictures of him. She does talk to him when []he calls. She does know that he does exist." *Id.* at 69. However, Child's knowledge of Father is not evidence that a parent-child bond exists. In fact, N.B. testified that Child does not mention Father or discuss telephone conversations with him after her custodial weekends with Paternal Aunt. *Id.* at 163. In addition, N.B. testified that Child has never returned from Paternal Aunt's custodial weekends with a card sent to her from Father. *Id.* at 165. Indeed, there is no evidence in the certified record that a parent-child bond exists between Father and Child. Therefore, it was reasonable for the court to infer that none exists. *In re K.Z.S.*, 946 A.2d at 762-763.

In addition, we reject Father's argument that the court abused its discretion in terminating his parental rights in the absence of a bonding

assessment. It is well-established that a court is not required by statute or precedent to order a formal bonding evaluation be performed by an expert. ***In re K.K.R.-S***., 958 A.2d 529, 533 (Pa. Super. 2008). Similarly, we reject Father's argument that the court abused its discretion in the absence of a bonding assessment concerning the "familial bond" he asserts exists between Child, Paternal Aunt, and Child's half-sibling. Child's bond with Paternal Aunt and her half-sibling, if any, is not relevant to the termination of Father's parental rights under Section 2511(b). ***See In re H.K.***, 161 A.3d 331, 340 (Pa. Super. 2017) (stating, "Any benefit [the c]hild may receive from knowing other biological family does not affect whether it would be in her best interests to terminate [the f]ather's parental rights."). Accordingly, we discern no abuse of discretion by the court in terminating Father's parental rights pursuant to Section 2511(b).

Decree affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/7/2021