J-S37018-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.D., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 596 EDA 2019 |

Appeal from the Decree Entered, January 25, 2019,
in the Court of Common Pleas of Monroe County,
Orphans' Court at No(s):  57 OCA 2018.

BEFORE:  BOWES, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:                **FILED AUGUST 23, 2019**

J.D. (Father) appeals from the orphan's court decree that granted the petition filed by the Monroe County Children and Youth Services (CYS) to involuntarily terminate his parental rights to son, C.S. (Child), pursuant to the Adoption Act.  **See** Pa.C.S.A. § 2511(a)(1) and (b).[1]  After review, we affirm.

The early years of this case are sparsely detailed.  Child was born in April 2012.  The family came to the attention of CYS in 2014 and in 2016, but on both occasions it was determined that Child was not without parental care. The relevant factual and procedural history is as follows:  In April 2017, however, CYS received a report that Father had sexual contact with Child. Father maintained that he was teaching Child the difference between a "good touch and a bad touch." **See** N.T., 1/22/19 at 10.  These allegations were

_____

[1] The trial court also terminated the rights of N.L (Mother), who did not appeal.

founded; Father was indicated for sexual abuse and charged with various sexual offenses.

Meanwhile, in July 2017, Mother brought Child to CYS and stated she could no longer care for him and requested that he be placed in foster care. Mother appeared to have unstable mental health. CYS sought to place Child with maternal grandmother, but she declined because she was already providing care to Mother's 11-year-old autistic son. Child was adjudicated dependent on July 28, 2017. Child has remained in the care of his pre-adoptive foster parent.

Father eventually entered a plea to endangering the welfare of a child. For this offense, Father was incarcerated from March 27, 2018 until July 27, 2018. Father maintains that his actions were accidental, unintentional, and not a sexual assault. The day before Father's release, CYS petitioned to terminate Father's parental rights. Upon his release, Father made an inquiry to CYS to learn what he needed to do in order to resume visitation with Child. Ultimately, Father did not complete the steps necessary before he could resume contact with Child, nor did Father follow up with CYS to determine what, if anything, he still needed to do.

The court held a hearing on CYS' termination petition on January 22, 2019.[2] Although CYS sought termination under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b), the court only granted the petition under Section 2511

---

[2] Child was properly represented by counsel pursuant to 23 Pa.C.S.A. § 2313(a).

(a)(1) and (b). The court also granted CYS' request to change the goal of the dependency case from reunification to adoption.

Father filed this timely appeal. He presents for our review the following issue:

> Whether the court erred in finding that CYS provided the elements of 23 Pa.C.S.A. § 2511(a)(1) and (b) through clear and convincing evidence.

Father's Brief at 5.

We begin with our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re Adoption of A.C.*, 162 A.3d 1123, 1128 (Pa. Super. 2017) (quoting *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section

2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (citation and quotation marks omitted).

Father contends that the court failed to properly consider the efforts he made to establish visitation with his son and complete all goals in his service plan both over the life of the case as well as the six months immediately preceding the filing of the termination petition. Father alleges that CYS prevented him from establishing contact with his son by failing to make reasonable efforts to verify or assist with his compliance. Finally, Father argues CYS failed to present clear and convincing evidence that termination was in Child's best interest.

Section 2511(a)(1) provides that a court can terminate parental rights if, *inter alia*, the petitioner provides clear and convincing evidence that the respondent-parent failed to perform parental duties for a period of at least six

months immediately preceding the filing of the petition. ***See*** 23 Pa.C.S.A. § 2511(a)(1).

Although it is the six months immediately preceding the filing of the petition that is most critical to the analysis, the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. ***In re B.,N.M.***, 856 A.2d 847, 855 (Pa. Super. 2004) (citation omitted).

In an analysis under this section, we have acknowledged there is no simple or easy definition of parental duties. But we have explained:

> Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> * * *
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

***Id.*** (Internal citations and quotations omitted).

The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination. *Id.*

A parent's incarceration does not, in itself, provide grounds for the termination of parental rights. *Id.* An analysis of an incarceration case depends upon which provision under section 2511(a) termination is sought.

When a petitioner seeks to terminate an incarcerated parent's rights under section 2511(a)(1), we have said a parent's responsibilities are not tolled during incarceration. *Id*. The court's focus is whether the parent utilized resources available while in prison to maintain a relationship with his or her child. *Id*. (citation omitted). An incarcerated parent is expected to utilize all available resources to foster a continuing close relationship with his or her children. *Id.* Where the parent does not exercise reasonable firmness "in declining to yield to obstacles," parental rights may be forfeited. *In re Adoption of A.C.*, 162 A.3d at 1130 (quoting *In re Adoption of McCray*, 331 A.2d 652, 655 (Pa. 1975)).

Finally, the court must account for an incarcerated parent's self-imposed barriers while simultaneously evaluating the parent's duty to overcome them:

> Where a non-custodial parent is facing termination of his or her parental rights, the court must consider the non-custodial parent's explanation, if any, for the apparent neglect, including situations in which a custodial parent has deliberately created obstacles and has by devious means erected barriers intended to impede free communication and regular association between the non-custodial parent

and his or her child. Although a parent is not required to perform the impossible, he must act affirmatively to maintain his relationship with his child, even in difficult circumstances. A parent has the duty to exert himself, to take and maintain a place of importance in the child's life.

*In re B.,N.M.*, 856 A.2d at 855-856 (citations omitted).

Instantly, Father created for himself considerable obstacles that impeded his ability to freely communicate and associate with Child. His inability to overcome these barriers equated a failure to perform his parental duties under Section 2511(a).

At the inception of the dependency case in July 2017, the court ordered Father to comply with offender's treatment in forensic counseling, and to engage in a risk assessment while his charges were pending. *See* N.T., 1/22/19, at 13. Only after CYS received a recommendation and approval from counseling providers could visitation between Father and Child occur.

Father apparently engaged in counseling, but in March 2018, Father pleaded guilty to endangering the welfare of a child. As a part of his sentencing, CYS received a forensic counseling recommendation. The recommendation indicated that Father should be referred to sex offender group treatment; he should abide by all the rules of any treatment program he enters; he should submit to a crime-specific therapeutic polygraph exam within two months after beginning his treatment if he continued to deny assaulting the victim in any manner; and it was recommended that he not have any unsupervised contact with any minors. *Id.* at 18. Still, he was considered low risk for reoffending. *Id.*

After four months' incarceration, Father was released in July 2018. Critically, Father's compliance and cooperation with CYS was minimal in the months following his release. *Id.* at 24. The CYS caseworkers testified that in order for Father and Child to resume contact, CYS needed to know from Father's therapist that such contact was appropriate. *Id.* at 25; 30. CYS was also concerned because Father had a history of being hospitalized for suicidal ideations. *Id.* at 40. CYS also never received any information regarding whether Father submitted to the therapeutic polygraph as a part of his criminal sentence. *Id.* at 27. A caseworker explained that Father never called the agency to question any of the goals or ask about what he needed to do in order to reunify with Child. *Id.* While Father initially contacted the agency in August 2018, he never contacted CYS after mid-September 2018. He did not provide proof that his therapist approved of contact between Father and Child. At the time of the hearing, Father had yet to complete all the steps necessary before he could have contact with Child. *Id.* at 53.

Father contends that CYS had an obligation to reach out to the therapist in order to help Father do what he needed to do in order to see Child. *Id.* at 38. In other words, Father argues CYS did not make reasonable efforts to facilitate the reunification. This argument is relevant to a court's consideration of both grounds for termination and the best interests of the child, but neither Section 2511(a) or (b) requires a court to consider the reasonable efforts provided to a parent prior to the termination of parental rights. ***In Interest***

*of H.K.*, 161 A.3d 331, 337 (Pa. Super. 2017) (citing *In re D.C.D.*, 105 A.3d 662, 672 (Pa. 2014)).

> Our Supreme Court has concluded that although
>
> > reasonable efforts should be considered and indeed, in the appropriate case, a trial court could insist upon their provision, we hold that nothing in the language or purpose of [42 Pa.C.S.A. § 6351(f)(9) of the Juvenile Act] forbids the granting of a petition to terminate parental rights, under Section 2511, as a consequence of the agency's failure to provided reasonable efforts to a parent.

*In re D.C.D.*, 105 A.3d at 675.

Here, Father had an affirmative duty to exert himself, employ all available resources, and use reasonable firmness to maintain a relationship with Child. We recognize that Father faced atypical difficulties, but they were all of his own making. Even if we agreed with Father, that CYS was not in a rush to aid him in his reunification, we cannot say that CYS failed to provide reasonable efforts. And we certainly cannot conclude that CYS's actions barred the court from granting the termination petition. Considering only the time period following Father's release, the court apparently determined that Father was content to do very little while others provided Child with necessary and vital care. The court found Father failed to perform his parental duties; this finding was not an abuse of discretion. We conclude that termination was warranted under the first prong of the requisite analysis.

We turn now to the second prong of the termination analysis. The barriers to the parent-child relationship – which again, were the result of

Father's actions and inactions – also prohibited Father from having a worthwhile bond with Child. Child had not seen Father since April 2017, or for approximately 21 months at the time of the termination hearing. Child's counsel indicated that Child was bonded to his foster parents and preferred to stay in their care. He does not ask about Father. *Id.* at 58. Conversely, Father offered no testimony or evidence on this portion of the termination inquiry. In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008). We conclude that the orphans' court did not abuse its discretion by concluding that termination best serves Child's needs and welfare.

Based on the foregoing, we conclude that the orphans' court did not abuse its discretion by involuntarily terminating Father's parental rights to Child pursuant to Section 2511(a)(1) and (b). Accordingly, we affirm the decree of the orphans' court.

Decree affirmed.

*Judgment Entered.*

_____
Joseph D. Seletyn, Esq.
*Prothonotary*


*Date: 8/23/219*

- 10 -